SAMUEL P. WILLIAMS *vs.* GEORGE L. LILLEY ET UX.

Third Judicial District, Bridgeport, October Term, 1895.   ANDREWS, C. J.,
      TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

The plaintiff leased the upper floors of a business block owned by the
   defendants, for the term of ten years at an annual rent of $3,000, with
   an option to purchase the entire property during, or at the end of the
   term, for $120,000 (of which $100,000 might remain on mortgage upon
   the property), less such sum as he might then have paid by way of
   rent.  The contract further required the plaintiff to pay all taxes and
   insurance upon the property, to heat the building and furnish fuel
   therefor, to maintain the elevator, and generally to do all things neces-
   sary to make the premises desirable for tenants, and prevent deprecia-
   tion in the value of the property.  The defendants, upon their part,
   covenanted that if the net receipts of the plaintiff by way of rents,
   should not equal the rent paid by him, they would repay him the loss,
   provided he should make a written statement of such deficit each year,
   and give them notice of his intention to claim reimbursement there-
   for.  The agreement also provided that the defendants, upon receipt
   of such a notice, might cancel the lease.  The plaintiff entered into
   and continued in possession, under the contract, performing all his
   covenants, until the upper stories of the building were rendered un-
   tenantable by fire.  The defendants adjusted the loss, and received
   from the insurance companies as compensation therefor, about $24,000,
   of which they expended about $15,000 only, in rebuilding; but whether
   the building was fully restored to its former value and usefulness or
   not, did not appear.  Shortly thereafter the plaintiff notified the de-
   fendants of his election to buy the property, demanded of them a deed,
   offering to give back a mortgage pursuant to the contract, and at the
   same time insisted that the unexpended insurance money belonged to
   him, and should be credited to him as part of the cash payment of
   $20,000 called for by the agreement.  This sum if credited to the
   plaintiff would, together with the amount of rent then paid by him,
   have equaled or exceeded the stipulated cash payment of $20,000.  The
   defendants refused to comply with these demands, and the plaintiff
   brought suit for the specific performance of the agreement.  *Held:—*
1. That the intent of the parties, as evidenced by the peculiar and excep-
     tional features of the agreement, was to treat the plaintiff's election
     to purchase the property, whenever in fact made, as relating back to
     the date of the execution of the agreement, thus constituting in legal
     effect a present purchase of the property.
2. That in absence of controlling precedents to the contrary, the agree-
     ment ought to be so construed as to accomplish this intent, which ac-
     corded with the principles of equity and good conscience, as well as
     with the doctrines applicable to the equitable conversion of property.

3. That as it did not appear that the building had been in fact fully re-stored by the expenditure of part only of the insurance money, the plaintiff was equitably entitled to have the unexpended insurance money applied upon the cash portion of the purchase price.

Whether the application might not have been made in reduction of the mortgage note instead of the cash payment, had the defendants sea-sonably insisted upon that course, *quære.*

The plaintiff alleged in his complaint that the property was not fully re-stored by the partial expenditure made, which the defendants denied; but upon the trial the plaintiff was prevented by the objection of the defendants, which the court sustained, from offering evidence in proof of this averment. *Held* that whether the question of full restoration was immaterial to the rights of the plaintiff, as decided by the trial court, or not, the defendants certainly could not question the correct-ness of the ruling.

[Argued October 23d—decided November 22d, 1895.]

SUIT to enforce the specific performance of a contract for the sale of real estate, and for other relief; brought to the Superior Court in New Haven County and tried to the court, *Prentice, J.;* facts found and case reserved for the advice of this court. *Judgment advised for the plaintiff.*

The case is sufficiently stated in the opinion.

*William C. Case* and *William H. Ely,* for the plaintiff.

The sole question is whether the plaintiff is entitled to the unexpended balance of the insurance money, to wit, $8,789.94, as a part of the purchase money.

It is plain from the terms of the agreement that the plain-tiff's right to become the owner of the property, might be exercised at any time during the lifetime of the lease. The happening of no event which did not terminate the lease, could defeat or impair that right. The contingency of fire was foreseen and provided for, and the conduct of the parties in relation thereto, both before and after the fire occurred, shows clearly that they did not regard that event as inter-rupting or in any way changing their contract relations. It is plain, too, that the insurance was to be for the benefit of both. That was the intention of the parties as manifested by their conduct both before and after the fire. The plain-tiff was to pay " all taxes and insurance." He was to do all

things "necessary to prevent depreciation of the property." This was the letter of his agreement. But the defendants after this agreement was made, had several conversations with the plaintiff about the amount of insurance to be placed on the property. Why? If the plaintiff had no interest in the insurance, why consult him as to the amount?

Again, when the fire occurs the parties together commence the reconstruction of the building and apply the proceeds of the insurance to the work without a word—as a matter of course—until after two thirds of the money had been expended for their mutual benefit.

All the plaintiff contends for here is that the entire insurance money shall be applied in accordance with the evident intention of the parties, for the mutual benefit of both. The fire did not terminate the lease. General Statutes, § 2969.

It is no answer to say that the plaintiff need not have chosen to purchase the property after the fire. He was and is bound to do all the things as lessee to which the contract ever held him. But the option is an integral part of that contract. It was in consideration of that right that he agreed to do what he is now bound to do, and it is the defendants' part of the contract to convey to him the entire property which they agreed to convey, or its equivalent, and the unexpended insurance is an acknowledged part of that equivalent.

The great weight of authority in this country is in support of the proposition that where there is a contract for the purchase and sale of property, the vendor, if he remains in possession, holds it in trust for the vendee, and the vendee must bear the loss, and is entitled to all the benefits and gains of the property after the contract is made. *Frick's Appeal*, 101 Pa. St., 488; *McKechnie* v. *Sterling*, 48 Barb., 330; *Hill* v. *Protection Co.*, 59 Pa. St., 474; Sugden on Vendors, 254; *Insurance Co.* v. *Updegraff*, 21 Pa. St., 513; *Reed* v. *Lukins*, 44 id., 200; Fry on Specific Performance, 360.

*John W. Alling* and *Charles G. Root*, for the defendants.

I. The statement of facts does not permit the plaintiff to

maintain his case, unless the court will make a new contract for him, or will add a new term to the written contract not embraced therein, and which it is clear the parties probably never would have inserted.

II. The authorities are clearly in favor of the defendants; the case of *Gilbert & Ives* v. *Port*, 28 Ohio St. 276, is in principle exactly like the case at bar. And the facts are very similar to those involved in the present case. See also *Poole* v. *Adams*, 33 L. J. Eq., 369; *Raynor* v. *Preston*, 14 Ch. Div., 297; *Lees* v. *Whiteley*, 2 Eq. Cas., 13; *Loft* v. *Dennis*, 1 E. & E., 474; *Kerr* v. *Day*, 14 Pa. St., 112; *Edwards* v. *West*, 7 Ch. Div., 858; *Sutherland* v. *Parkins*, 75 Ill., 338; *Dunston* v. *School District*, 94 Mich., 502; *Waterman* v. *Banks*, 144 U. S., 394; *Bostwick* v. *Hess*, 80 Ill., 138; *Newton* v. *Newton*, 11 R. I., 390; *Weston* v. *Collins*, 11 Jur. N. S., 190; *Harding* v. *Gibbs*, 125 Ill., 85; *Richardson* v. *Hardwick*, 106 U. S., 252.

FENN, J. This is a case reserved by the Superior Court for the advice of this court. The facts found, so far as material to be stated here, are as follows:—

On June 20th, 1890, the defendants, husband and wife, married since 1877, were, and still are, the equal owners, as tenants in common, of a piece of land situated in Waterbury, in this State, with a business block, five stories in height, standing thereon. On said day, the plaintiff and defendants executed in duplicate an instrument by which the defendants leased to the plaintiff the four upper floors of said building, for the term of ten years from the 1st day of July, 1890, for the annual rent of three thousand dollars. Said lease was in the usual form of such instruments, but contained the following peculiar provisions: " With right to purchase said property at the expiration of this lease, or before, at the option of said Williams, for the sum of $120,000, whatever sum said Williams shall have paid before that time, by way of rent, to be deducted from that sum. Said Williams covenants to pay all taxes and insurance, to keep said building, to operate and keep running the elevator in said building, to heat said

building and furnish fuel therefor, and generally to do and perform all things necessary to make said property desirable for tenants, and prevent the depreciation in value thereof. Said Williams shall keep books of account in which shall be entered all receipts and expenditures relating to said property, with vouchers for the payment of all moneys therefor, which books and vouchers shall at all reasonable times be open to the inspection of the lessors or their agents, and shall render a statement once each year, of his receipts and expenditures relating to said property. . . . And said lessors hereby further covenant and agree that in case said Williams shall not, at the expiration of this lease, have realized from rents collected by him after the payment of expenses as aforesaid, so much as he shall have paid the lessors by way of rent, in such event they will repay him such a sum as he shall have paid by way of rent in excess of his net receipts from rents collected by him ; but it is mutually understood and agreed that at the expiration of each year said Williams shall make a written statement of such deficit and of his intention to claim reimbursement therefor, if any such deficit at any time occur, and on receipt of such notice said lessors may cancel said lease if they so desire, by notice in writing to said Williams within ten days from the receipt of such said statement and notice of claim by Williams. . . . It is agreed that if said Williams shall purchase said property, $100,000 of the purchase price shall remain on mortgage at five per cent."

Upon July 1st, 1890, the plaintiff entered into possession and has continued in possession down to the present time. Shortly after the lease was executed, the plaintiff and the defendant Lilley had several conversations concerning the amount of insurance which should be placed upon the property. As the result of these talks, insurance to the amount of $35,000 was placed, to the mutual satisfaction of the parties. The building continued to be insured for said sum down to the time of the fire hereinafter described. The policies were all issued to Geo. L. Lilley and wife, and as soon as issued, were delivered to the defendant, Lilley, who kept

them. The plaintiff paid the premiums. At no time was any conversation had between the parties as to the terms of the policies, the interest to be insured, for whose benefit the insurance was to be, or the use or application of any insurance money which might be received in case of a loss. The plaintiff regularly continued to pay to the defendants the payments of rent stipulated in the lease, and in other respects to keep the covenants of said instrument, until the time of the fire.

On April 9th, 1893, a fire occurred in the upper portion of said building. As a result, the four stories occupied by the plaintiff were seriously injured both by fire and water, so that they were wholly untenantable. Immediately after the fire, Mr. Lilley adjusted the loss with the several insurance companies, and received from them the sum of $24,351.54 in settlement. Immediately after the fire, steps were taken for the reconstruction of the building. The plaintiff desired some changes made for the better adaptation of the building for renting. As the result of the conferences between him and Mr. Lilley, who in all matters connected with the care and charge of the premises acted as the agent of his wife, it was arranged and agreed that such changes should be made, and contracts for the reconstruction of the building, incorporating such changes, were made by Mr. Lilley, acting for himself and his wife. In consideration of the making of these changes, the plaintiff agreed to make his monthly payment of rent without interruption, and to do on his part, as ordinary repairs, some minor things involved in putting the property into condition suitable for renting. Said restoration was wholly completed in the early part of July, 1893, and the tenants then began to re-occupy.

The defendants expended in restoring said building, $15,161.60. They also performed services by themselves and their teams and laborers, of the value of $400, leaving in the defendants' hands a balance of said insurance money unexpended in the restoration of said property, of $8,789.94.

Ever since the restoration of said building was completed and paid for, the plaintiff has claimed and persistently asserted to the defendants that the excess of insurance re-

ceived over and above the cost of restoration belonged to him, and that whenever he should exercise his right to purchase the property under the provisions of the instrument referred to, he would be entitled to have such excess applied on account of the purchase price. This claim of the plaintiff the defendants have ever disputed and now dispute. The correctness of this claim of the plaintiff is the sole question we are now called upon to determine.

Without adopting what may be termed the extreme theories of either party, and confining ourselves to what we deem manifest and clear, it is evident, we think, that the option to purchase the entire property, conferred by the contract upon the plaintiff, constituted a material inducement to the agreement in question, which established the relation between the defendants and the plaintiff of lessors and lessee of a portion only of such property. There were in fact two contracts, evidenced by the same instrument, related in some degree, in other essentials distinct. The same consideration extended, measurably at least, to both. The right to purchase the entire property furnished an inducement to the plaintiff to make and carry out the stipulations in regard to such entire property, though he was to be a tenant of only a portion of it.

If the case before us, then, is not one in which the relation of parties to a contract for the sale and purchase of real estate exists, it is also clearly not one in which that of lessor and lessee of property, with an incidental option to the lessee to purchase only the leased property, is created, or of a simple unilateral contract of option. None of the cases cited in the briefs and arguments of the counsel, in other jurisdictions, are precisely in point, and as confessedly there is no similar case in our own State, we deem ourselves fully at liberty, and in duty bound, to consider the question presented to us res integra, and to decide it upon our view of what is reasonable, equitable, and just. Indeed, the provisions of the agreement between the parties are so exceptional and peculiar, that we desire it to be clearly understood that our decision is largely based upon them, and confined to the

individual case presented, and should not be regarded as lay
ing down general principles alike applicable to all contracts
of option, or to such contracts usually.   Here, in fact, was
not only a lease of a portion of certain premises, with the
grant to the lessee of the right to purchase all of such prem-
ises, to be exercised at the lessee's option, either at the time
specified in the instrument for the termination of the lease,
or at any earlier time, but upon such purchase the sums
theretofore received by the defendants from the plaintiff by
way of rent, it was provided, should be applied as part pay-
ment of the purchase price.   The intent of the parties to treat
the contract, in the event of the plaintiff's election to take
the property, as in effect a present purchase of it, as of the
date of the agreement, appears to be thus clearly manifested.

Again, that it was the clear understanding of both parties
that the plaintiff would purchase the property, and also that
the right granted him to do so constituted a material consid-
eration and inducement for his undertakings, is shown by
other provisions of the instrument, namely, the covenant of
the plaintiff to pay all taxes and insurance on the entire prop-
erty, to keep the whole building, to operate and keep run-
ning the elevator in it, to heat it, furnish fuel therefor, "and
generally to do and perform all things necessary to make said
property desirable for tenants and prevent the depreciation
in value thereof."

Thus the situation of the parties was this: During the
term of the lease, or until the plaintiff exercised his right
to purchase, the defendants were relieved from all expendi-
ture upon, or by reason of, the property in question, and
secured as their net income therefrom the full rental of the
ground floor of the building, and $3,000 a year, paid them by
the plaintiff.   When the plaintiff used his option, the defend-
ants would retain what they had received, except that then
the $3,000 per year paid by the plaintiff was to be applied as
part payment of the purchase price.   It was provided that
in case the plaintiff failed to realize from rents collected by
him, after payment of the expenses provided for, so much as
he paid for rent, he should then be entitled to relief on the.

specified conditions, as hereinbefore appears. But in this event he would receive nothing for his services in the care of the property, and the defendants would enjoy the entire gross receipts from the rental of the first floor, without deduction in any contingency.

From a careful consideration of these peculiar features of the instrument, it appears clear to us that the plaintiff's relation to the premises in question, as lessee of a portion thereof, was, and was designed, understood and intended by the parties to be, subordinate and incidental to a broader connection with the entire property, as an inchoate or initiate purchaser thereof; that his position was analogous to what it would have been if he had entered into possession under an agreement to purchase, which contained a provision that on failure to complete the contract his rights should cease at a stipulated time, possession should be surrendered, and the money before that time paid should be forfeited to the vendor; in other words, a contract relating to real estate, but similar in form and effect to such conditional sales of personal property, as that considered in *Loomis* v. *Bragg*, 50 Conn., 228.

Under such a construction—which seems to us a just one—ought it not to be held that the sums stipulated to be paid, and in fact paid by the plaintiff for insurance upon the property, were so paid with the intention, attributable to both parties, that such insurance should protect both; should, in case of loss, though payable to the defendants as owners of the legal title to the property insured, be, what the property itself was, a thing to which an equity applied, a trust attached, a matter to which the contract in its spirit and essence extended? If such was the intention and understanding of the parties, plainly discoverable and apparent from the instrument itself, ought it to be enforced and effectuated by the decree of a court of equity? These are in effect the questions which we are now called upon to decide.

Here then, was, as has been stated, at the time of the fire, an existing contract between the parties, upon full consideration, embracing a right of option to purchase, of the exceptional character described. That right had not been lost,

but existed, and was recognized by the defendants as existing, at the time the plaintiff sought to exercise and enforce it after the fire. Meanwhile an event had happened for which the contract did not in express terms provide. Insurance to reimburse the loss by fire of property embraced within the option, had been received by the defendants. This insurance had, as we have seen, been effected pursuant to that part of the contract which was not confined to the leased property, in the name of the defendants, but at the expense of the plaintiff.

To whom, to repeat, as between the parties, upon the exercise of the option, does such insurance belong? The plaintiff contends that the benefit of this payment received by way of indemnity belongs to him who bore the burden of paying the premium, for which the risk was taken by the insurance companies. The contract, so far as express and specific language is concerned, is silent. The defendants say truly: " In the enforcement of contracts, no principle should be more carefully guarded than that it is the function of the court to interpret, and not alter, contracts." They also say correctly that the court should not " add a new term to the written contract, not embraced therein, and which it is clear that the parties probably never would have inserted." We will go further than this. We assume no right to add a new term to a contract, though it were clear that had the attention of the parties been called to it in all probability it would have been inserted. But notwithstanding this, and in entire consistency with it, it has ever been held that " the great object in the construction of contracts is to give effect to the intention of the parties." 1 Swift's Digest, side page 221. Such being the rule, where, as in the present instance, a contingency occurs for which no express provision is made, the question is not what the parties would have provided in case such a contingency had occurred to them, as it may have done, but what they have provided in the language used, construing it, not by " sticking in the bark," and confined to the letter " which killeth," but in the spirit which " maketh alive." For this purpose, the familiar rule was established, and is in-

voked, " that the parties are deemed to have intended that
each respectively should have and bear the full and just ben-
efit and burden of his contract." Let us, if possible, ascer-
tain what will result from the application of such principle to
this case.

At the time the plaintiff declared his option to take the
property, by demanding a deed pursuant to the contract, such
property had been materially damaged by fire, and the de-
fendants had received, as compensation or equivalent, the
insurance money in question. It is true they had also ex-
pended a considerable portion of such insurance in the work
of restoration, so that the subject-matter of the present con-
troversy is the unexpended balance of such money only.
But let us first, with a view to clearness, look at the matter
as it would have stood if, when the option was exercised,
none of it had been so expended, but all remained intact in
the hands of the defendants, while the property itself con-
tinued in the condition in which the fire left it. What would
be the rights of the parties in such a case ? The money was
derived from an insurance of the defendants' interest in the
property. It belonged to them. But so did the property
insured. Indeed the money itself was theirs, because it rep-
resented in another form, stood for, and took the place of,
what had been theirs ; what, so far as it remained, continued
to be theirs. But when the plaintiff elected to exercise the
option which was his, because he had purchased and paid for
it, the defendants were bound by the obligation of their con-
tract to convey such property to him. They were not less
bound to convey what remained, because, through no fault
of theirs, it did not all remain. They were not, indeed, them-
selves in any way insurers to the plaintiff that, during the
space of time for which his right to exercise his option con-
tinued, the property should remain unchanged in form, or
undeteriorated in value. Changes that would appreciate or
depreciate price or utility, independent of any act of the
parties, might occur in an infinite variety of ways, and such
occurences would leave the contract by which the option was
conferred, untouched, and itself unchanged. If such change

occurred in consequence of no act or conduct of the defend-
ants which was in itself a violation of duty imposed by the
letter or spirit of the contract, it would be their duty, upon
demand properly made, in accordance with and during the
life of the contract, to convey the property, not as it was at
the date of the making of the contract, but as it existed at
the time of the demand. How then, in the case as we are
now supposing it to be, does the property so stand? A part
of it remains in a damaged and ruinous condition. But the
balance is represented by a sum of money received by the
defendants, upon the adjustment of insurance, upon the basis
of a just representative and equivalent for the loss. Why
should not the two, the injured property and the sum received
for the injury, stand together, and constitute together in its
present form, the estate contracted to be conveyed to the
plaintiff, in the event of his exercise of his option? It seems
to us that they should. What injustice is done to either by
this result? How is it possible to do justice to both in any
other way? It gives the plaintiff no benefit beyond his orig-
inal contract. It imposes upon the defendants no burden
which they did not therein, voluntarily and unquestionably,
for full consideration received, assume. The plaintiff gets
nothing from the defendants, except what they themselves
have received, not for the use of their property, but for the
property itself, which they had agreed to convey to the plain-
tiff, in case he elected to take it. In this conclusion, no obli-
gation on the part of the defendants to insure the property
at all is involved, nor that the insurance, if placed, should
be adequate to cover loss.

It is true that in the contract before us it was provided
that the property should be insured, and this to be done, as
it was done, at expense of the plaintiff. But, no matter
here, the point is that there was in fact adequate insurance
received by the defendants. To whom, by the principles of
equity and good conscience, upon the exercise of the plain-
tiff's option, does it belong? It appears to us that the prin-
ciples of natural justice, the teachings of conscience, and the
rules of that reason which has been denominated the life of

the law, and without which it should not now exist, demand that when a party holds property which another has a right to purchase from him at a fixed sum, he should be faithful to the obligation which that right imposes upon him, in its very spirit and essence ; that he should not keep the idea of obligation out of sight whenever some chance occurrence renders it convenient and pecuniarily profitable for him to do so.

We conclude, then, that if in the case before us, the property, at the time the plaintiff demanded the conveyance, had remained as it was after the fire, without reparation, while the money received for insurance was unexpended and unpledged for repairs in the hands of the defendants, the plaintiff would have been entitled to receive such money as part and parcel of the property, which it would have been the duty of the defendants to convey to him. Being money, it of course amounts to the same thing to deduct it from the stipulated purchase price.

We will say further (although we wish it to be clearly understood that we do so, not for the purpose of supplying an additional ground for our decision, nor as adopting as correct—certainly not without careful limitations—the doctrine to which we refer, but because the matter was fully argued before us) that the same results as those which we have stated would also, we think, be reached by the logical and consistent application of the established equitable doctrines concerning estates arising from conversion. Regarding this, Pomeroy, in his work on Equity Jurisprudence, 2d Edition, Vol. III., § 1163, supporting the statement made with abundant citation of authorities, both English and American, says : "In contracts of sale upon the purchaser's option, the question whether or not a conversion is effected at all, cannot of course be determined until the purchaser exercises his option ; but the moment when he *does* exercise it, the conversion, as between the parties claiming title under the vendor, *relates back* to the time of the execution of the contract. Thus, where a lessee with an option to purchase—or any other purchaser with an option—duly declares his option after the death of the lessor or vendor, who is the owner in fee, the

realty is thereby converted *retrospectively* as between those obtaining under the lessor or vendor, or under his will; that is, as between the heir or devisee on one side and the legatees or next of kin on the other, the proceeds will go to his personal representatives, though the heir or devisee will be entitled to the rents up to the time the option is declared." To this statement, Pomeroy, however, adds: " This rule is confined to conversion between the parties claiming title under the vendor or lessor, his heirs, or devisees, or his legatees, next of kin, and personal representatives, and does not apply as between the vendor and purchaser themselves." The only authority cited by this author for the statement last given, is the case of *Edwards* v. *West*, L. R. 7 Ch. Div., 858, 862, 863. This case has, however, been followed in some more recent cases in England, and to some degree in this country, most noticeably in *Gilbert & Ives* v. *Port*, 28 Ohio St., 276. But on the other hand, there are recent and well considered cases in which the courts of this country have failed, as we do, to recognize the consistency to the established principle stated, of *Edwards* v. *West*. See *Kerr* v. *Day*, 14 Pa. St. 112, 53 Amer. Dec. 526; *Peoples Street Railway Co.* v. *Spencer*, 156 Pa. St. 85.

Such then, as above expressed, being our judgment as to how the case would stand if all the money had remained unexpended, and no repairs had been made, we come to the inquiry, how is the case altered by what, as the record shows, was in fact done? On the part of the plaintiff it was argued, and with force, that the conduct of the defendants, in the expenditure of insurance in repairs, was a recognition of the right of the plaintiff to its benefit, in case he elected to take the property. But if we assume this to be correct, and further, that such recognition would fix and establish the liability, if in any wise doubtful before, we think the extent of such liability, so established, would only be the amount expended, and a recognition of the right of the plaintiff to take the real estate in its present form. Concerning this, no dispute comes before us. The unexpended portion of the insurance money is the entire subject-matter of the

present controversy. Whether the money which was expended, actually restored the premises to their former usefulness and value, does not appear.

The record shows that a sum of money has been acquired by the defendants, which was paid to them upon a larger insurance upon the property, as an ascertained and adjusted compensation for the loss sustained. A portion of that money has been expended upon the work of rebuilding. In the absence of anything further appearing, has the plaintiff any claim to the benefit of the unexpended balance? We think he has. Advancing from the position we have already taken, that if none of the money had been expended the plaintiff could claim the benefit of all, we think—if part was properly expended upon the property, as is the undisputed fact here—the plaintiff is equally entitled to the balance; unless indeed, some further fact exists, of the character of what, under the old system of pleading, was known as matter in confession and avoidance—matter which, alike under our present system of pleading, should be "specially pleaded" (Rules of Practice, 58 Conn. 566, § 6)—which satisfied, destroyed, or barred such right. As regards the subject of pleading or statement, the plaintiff indeed anticipated in his complaint, what we consider, if material, as more properly a matter of defense. He assumed the burden of showing that the property was not restored by the expenditure of a portion only, of the money paid upon it. Whether such fact would alter his equitable claim to the money may be doubtful. But it was stated in argument as a fact admitted by both parties, that the plaintiff was prevented by the objection of the defendants, sustained by the court, from offering evidence in support of his allegation; and by such ruling the court has held that the allegation of the plaintiff was unnecessary, and that the equitable right of the plaintiff, if it existed at all, extended to the balance in question, irrespective of the question as to full restoration. This ruling may be correct —in any event it is final for the purposes of this case. The defendants certainly cannot question its correctness.

Taking the case as it stands, the only case we feel at lib-

Williams *v.* Lilley et Ux.

erty to take, we think the plaintiff is entitled to have the unexpended balance of the insurance money appropriated and applied towards the purchase price, and that judgment should be rendered in his favor accordingly for the relief prayed for in the complaint.

Possibly such application should have been in reduction of the mortgage note instead of the cash payment, if the defendants had so desired and had made that claim in time; but they did not object to the tender on this ground, made no such claim upon the trial below, and in the argument here did not raise the question; perhaps because the mode of application is not very material, in view of the fact that the mortgage note is on demand and payment can be enforced at the defendants' pleasure. Whatever view we might take of the defendants' right to direct the application of the money in their hands equitably belonging to the plaintiff, if they had properly made such claim, we are satisfied that equity does not require us to now alter the application which was made by the plaintiff when the demand for conveyance of the property was made, and to which the defendants by their conduct at the time of the tender, and in the trial of the case, apparently acceded. We therefore hold the plaintiff entitled to the application of the unexpended insurance money towards the cash payment of $20,000. The Superior Court is thus advised.

In this opinion the other judges concurred.