ESTHER CELINI *v.* UGO CELINI
(AC 29862)

Gruendel, Harper and Foti, Js.

Argued April 13—officially released June 30, 2009

*Charles T. Busek*, for the appellant (defendant).

*Mark S. Carron*, for the appellee (plaintiff).

*Opinion*

GRUENDEL, J. The defendant, Ugo Celini, appeals from the judgment of the trial court granting the post-judgment motion for contempt filed by the plaintiff, Esther Celini. The defendant claims that the court improperly (1) found him liable for certain extracurricular activity and college expenses of his children, (2) found him in contempt and (3) awarded attorney's fees and costs to the plaintiff. We affirm in part and reverse in part the judgment of the trial court.

The record discloses the following undisputed facts. The parties married in 1985, and four children were born of the marriage. Following the subsequent breakdown of their marriage, the parties entered into a separation agreement that the court incorporated into its judgment of dissolution. On September 15, 2003, the court dissolved their marriage, finding that it had broken down irretrievably without attributing fault to either party as to the cause.

Pertinent to the defendant's appeal are the following provisions of the separation agreement. Paragraph five provides in relevant part: "Until the [defendant] becomes employed, he and the [plaintiff] will each be responsible for one half the cost of [t]he after school activities, such as soccer and [driver's] education that are mutually agreed upon." Paragraph nine of the agreement provides in relevant part: "The [plaintiff] agrees to pay one quarter . . . and the [defendant] three quarters . . . of the cost of tuition, room, board and books using the University of Connecticut as a cap, for the years pertaining to their [three] daughters." Finally, paragraph twenty-nine provides in relevant part: "[I]n the event it shall be determined by a [c]ourt of competent jurisdiction that [the defendant] or [the plaintiff] shall have breached any of the provisions hereof, and/or the Superior Court at Bridgeport rules in favor of the position of the [defendant] or the [plaintiff] as to any major question submitted to the Superior Court pursuant to this [a]greement, the party against whom the ruling of the Superior Court is directed shall pay the other party court costs, sheriff's fees, reasonable attorney['s] fees, and all other reasonable expenses incurred by said other party as a result thereof."

On February 2, 2007, the plaintiff filed a postjudgment motion to modify child support. That motion alleged, inter alia, that the parties "now have three minor children," that "the defendant is now employed and earning

approximately $75,000 per year" and that the "current child support orders are not consistent with the child support guidelines." The parties thereafter entered into an agreement (modification agreement) providing that (1) the defendant will pay $267 per week in child support and that the parties will equally divide any unreimbursed medical expenses of the children; (2) the defendant will add the children to his health insurance policy; and (3) "there is an agreed upon arrearage of $1457, which will be paid by March 15, 2007." In addition, the modification agreement stated that "past medical bills and expenses will be addressed at a later date."[1] The court approved that agreement and entered an order thereon on March 8, 2007.

On December 26, 2007, the plaintiff filed a postjudgment motion for contempt in which she alleged that the defendant had failed to comply with certain obligations set forth in the separation agreement despite repeated demands for payment.[2] A hearing followed, and the parties submitted memoranda of law. On February 26, 2008, the court ruled in favor of the plaintiff in a three paragraph memorandum of decision.

In the first paragraph, the court noted the dissolution of the parties' marriage and recited paragraph five of the separation agreement. In the second paragraph, the court stated: "[The] plaintiff claims that the defendant owes, through December 26, 2007, $10,145.79 for college expenses as well as unreimbursed health expenses for the minor children in the amount of $1363.97. [The] defendant's argument that the college expenses agreed upon by the parties would only have to be paid if the

---

[1] The modification agreement also included provisions as to visitation and vacation time that are not germane to this appeal.

[2] The plaintiff's December 26, 2007 postjudgment motion for contempt made no reference to the modification agreement. Her February 20, 2008 memorandum of law in support thereof similarly contained no such reference.

defendant was receiving unemployment compensation and not while he was gainfully employed strains credibility and clearly [is] not the intent of the parties as expressed in a clearly flawed and ambiguous agreement (Neither [then counsel for the defendant] nor [then counsel for the plaintiff] were involved in prior proceedings). The extracurricular activities as set forth in open court and ascribed to the parties' children contain no fluff and no frills. They are rock bottom expenses that every reasonable person would treat as appropriate. They are not for golf or riding lessons. [The] defendant does not seriously contest the extracurricular expenses, and while he was not given the courtesy of allowing his permission, this does not vitiate the obligation."

The court's concluding paragraph stated that the "defendant is found in contempt and ordered to pay the following within thirty days of this judgment: $10,145.79—[college expenses]; $1363.97—medical expenses; $6683.80—[extracurricular] activities [for a total of] $18,193.56. In addition, attorney's fees in the amount of $3000 are ordered as well as any out-of-pocket expenses (court, marshal and subpoena fees)." On March 5, 2008, the defendant filed with the court a notice of intent to appeal. That same day, he filed a motion for reargument and reconsideration, which the court denied on May 6, 2008. This appeal followed.

Before considering the defendant's claims, we note that the parties both draw our attention to a misstatement in the court's memorandum of decision. Specifically, the court stated: "[The] defendant's argument that the *college expenses* agreed upon by the parties would only have to be paid if the defendant was receiving unemployment compensation and not while he was gainfully employed strains credibility and clearly [is] not the intent of the parties as expressed in a clearly flawed and ambiguous agreement . . . ." (Emphasis

added.) In his motion for reargument and reconsideration, the defendant apprised the court that it had mistakenly referenced college expenses in the aforementioned statement, as the defendant raised no such argument. In her appellate brief, the plaintiff concurs: "The words 'college expenses' are clearly a [typographical] error. Reading the entire paragraph in context, the court was clearly talking about the extracurricular [activity] expenses, not the college expenses. The defendant never claimed that his obligation for the college expenses ceased upon his employment; he only claimed that his obligation to pay for the extracurricular activities ceased upon his employment. Much testimony was provided to the court as to the intent of the parties regarding the payment for [extracurricular] activities. There was no testimony, or even discussion, of employment vis-a-vis the college expenses." We agree with the parties that the court's reference to college expenses in the aforementioned statement can only be read as a scrivener's error. We therefore turn our attention to the claims raised in this appeal mindful of that misstatement.

## I

In its memorandum of decision, the court found the defendant liable for certain extracurricular activity, college and medical expenses of his children. We address each in turn.

## A

The defendant first claims that the court improperly concluded that a provision in paragraph five of the separation agreement regarding extracurricular activity expenses was ambiguous. Under Connecticut law, a stipulated judgment that is incorporated into a judgment of dissolution is a contract and must be analyzed in accordance with the law of contracts. See *Issler* v. *Issler*, 250 Conn. 226, 235, 737 A.2d 383 (1999); *Davis*

v. *Davis*, 112 Conn. App. 56, 63, 962 A.2d 140 (2009). Whether a contract is ambiguous is a question of law subject to plenary review. *Enviro Express, Inc.* v. *AIU Ins. Co.*, 279 Conn. 194, 200, 901 A.2d 666 (2006).

It is well established that "[a] contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . [T]he mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Citation omitted; internal quotation marks omitted.) *Eckert* v. *Eckert*, 285 Conn. 687, 692, 941 A.2d 301 (2008).

Paragraph five of the separation agreement provides in relevant part: "Until the [defendant] becomes employed, he and the [plaintiff] will each be responsible for one half the cost of [t]he after school activities, such as soccer and driver['s] education that are mutually agreed upon." That provision plainly indicates that the defendant was responsible for an equal portion of his children's extracurricular activity expenses until he became employed. It contains no provision requiring the defendant to continue such payments upon his

employment. The provision, on its face, is unambiguous. As such, we must give that provision effect according to its terms.

In concluding that paragraph five was "clearly flawed and ambiguous," the court failed to provide any analysis or legal explanation for that determination. The determination appears to rest not on the terms actually contained in the separation agreement but, rather, on terms regarding the defendant's future employment that are absent from paragraph five. "[I]t is well settled that we will not import terms into [an] agreement . . . that are not reflected in the contract." (Internal quotation marks omitted.) *Ramirez* v. *Health Net of the Northeast, Inc.*, 285 Conn. 1, 16, 938 A.2d 576 (2008); see also *Gibson* v. *Capano*, 241 Conn. 725, 732, 699 A.2d 68 (1997) (axiomatic that courts do not rewrite contracts for parties); *Collins* v. *Sears, Roebuck & Co.*, 164 Conn. 369, 374, 321 A.2d 444 (1973) ("interpretation of a contract must be made in accordance with the terms employed in the instrument and a court cannot by that means disregard the words used by the parties or revise, add to, or create a new agreement"); *Williams* v. *Lilley*, 67 Conn. 50, 59, 34 A. 765 (1895) ("[w]e assume no right to add a new term to a contract, though it were clear that had the attention of the parties been called to it in all probability it would have been inserted"). Paragraph five of the separation agreement does not require the defendant to continue payment of extracurricular activity expenses upon his employment.

We note that other portions of the separation agreement specifically delineate the defendant's obligation with respect to certain financial obligations both during his period of unemployment and subsequent to his employment. Paragraph seven, for example, provides in relevant part that "the [plaintiff] has applied for the Husky Plan. [The plaintiff and the defendant] will split the cost of the plan . . . fifty-fifty. *When the*

[*defendant*] *obtains employment*, and if available through his employment, the [defendant] will cover the children on that plan." (Emphasis added.) Reading the separation agreement as a whole; *Barnard* v. *Barnard*, 214 Conn. 99, 109, 570 A.2d 690 (1990); it is clear that the parties contemplated the defendant's future employment and agreed to certain obligations related thereto. The payment of extracurricular activity expenses was not among them. Affording a fair and reasonable construction of the written words of paragraph five, we conclude that the provision in question is unambiguous. The court improperly concluded otherwise and found the defendant liable for $6683.80 in extracurricular activity expenses.

### B

The defendant also challenges the court's determination that he was liable for $10,145.79 in college expenses. He maintains that his quarrel with the college expense obligation concerned not the interpretation of the separation agreement but, rather, the plaintiff's failure to exhaust two custodial accounts that the defendant had established for the benefit of his children under the Uniform Gifts to Minors Act, General Statutes (Rev. to 1987)[3] §§ 45-101 through 45-109b. Although the defendant presented that argument at the contempt hearing, he did not raise that claim in his memorandum of law in opposition to the plaintiff's motion for contempt and the court did not address the claim in its memorandum of decision. Indeed, the court's decision does not reference the custodial accounts or contain any related factual findings. It therefore was incumbent on the defendant to request an articulation of that issue, consistent with his burden to provide this court with an adequate record for review. That he failed to do.

---

[3] The custodial accounts were established in 1987 and 1989 pursuant to General Statutes (Rev. to 1987 and Rev. to 1989) §§ 45-101 through 45-109b.

Under our rules of practice, it is the sole responsibility of the appellant to provide this court with an adequate record for review. Practice Book § 61-10. Practice Book § 66-5 permits an appellant to seek an articulation by the trial court of the factual and legal basis on which it rendered its decision. "[A]n articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification. . . . An articulation may be necessary where the trial court fails completely to state any basis for its decision . . . or where the basis, although stated, is unclear. . . . The purpose of an articulation is to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal." (Citations omitted; internal quotation marks omitted.) *Fantasia* v. *Milford Fastening Systems*, 86 Conn. App. 270, 283, 860 A.2d 779 (2004), cert. denied, 272 Conn. 919, 866 A.2d 1286 (2005). "[W]e will, in the absence of a motion for articulation, assume that the trial court acted properly." (Internal quotation marks omitted.) *Berglass* v. *Berglass*, 71 Conn. App. 771, 789, 804 A.2d 889 (2002). Because he failed to secure an adequate record, we do not reach the merits of the defendant's claim.

C

Also included in the judgment of contempt was a finding that the defendant owed $1363.97 in medical expenses. At the January 17, 2008 hearing, the defendant conceded that he had not complied with the order obligating him to pay a portion of the medical expenses of his children and agreed to pay $1363.97 in such expenses. That concession amply supports the court's finding.

II

The defendant also contests the court's contempt finding. Our Supreme Court recently clarified the standard of review applicable to civil judgments of contempt

in *In re Leah*, 284 Conn. 685, 935 A.2d 1021 (2007). It stated: "[O]ur analysis of a judgment of contempt consists of two levels of inquiry. First, we must resolve the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . This is a legal inquiry subject to de novo review. . . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding." (Citations omitted.) Id., 693–94. We apply that standard to each of the three bases of liability found by the court.

We begin with the court's finding that the defendant failed to comply with the order obligating him to pay certain medical expenses of his children. That order clearly and unambiguously required the defendant to pay half the cost of any unreimbursed medical expenses. The defendant concedes that he failed to comply with that order and makes no argument on appeal that his failure could be construed as anything but wilful. Accordingly, the court did not abuse its discretion in finding him in contempt on that ground.

We next consider the court's finding that the defendant failed to comply with the order requiring him to pay college expenses. Paragraph nine of the separation agreement provides in relevant part: "The [plaintiff] agrees to pay one quarter . . . and the [defendant] three quarters . . . of the cost of tuition, room, board and books using the University of Connecticut as a cap, for the years pertaining to their daughters." That provision confers a clear and unequivocal obligation on the defendant. The defendant acknowledges that he did not comply with that order but maintains that his

refusal was justified in light of his claim concerning the exhaustion of the custodial accounts that he had established for the benefit of his children. We disagree.

"An order of the court must be obeyed until it has been modified or successfully challenged." (Internal quotation marks omitted.) *Eldridge* v. *Eldridge*, 244 Conn. 523, 530, 710 A.2d 757 (1998). In *Eldridge*, an alimony payor was found to be in contempt for engaging in self-help rather than seeking a modification of the alimony order, specifically, for applying credits he believed he was owed against the amounts due under the order. Our Supreme Court held that the contempt finding was not an abuse of discretion, rejecting specifically the claim that the payor's belief that he was entitled to credits necessarily precluded a finding of wilfulness. Id., 528–29; see also *Sablosky* v. *Sablosky*, 258 Conn. 713, 721, 784 A.2d 890 (2001) (ambiguous order does not automatically preclude finding of wilfulness). Similarly, the defendant here does not dispute that he failed to pay the amounts due pursuant to paragraph nine; he simply insists that those payments should be made from the custodial accounts. Given that position, we cannot say that the court abused its discretion in finding him in contempt on the basis of his failure to comply with the order requiring payment of college expenses.

The third basis for the finding of contempt concerns the court's finding that the defendant failed to comply with the order requiring him to pay "one half the cost" of extracurricular activities. We already have determined that the court improperly concluded that the relevant provision contained in paragraph five of the separation agreement was ambiguous. A prerequisite for a finding of contempt is the existence of an order binding a party in some manner. Because the defendant, under the plain terms of the separation agreement, was not obligated

to pay extracurricular activity expenses once employed, contempt cannot be found on that ground.

We conclude that the court's finding that the defendant wilfully failed to meet his obligations concerning medical and college expenses was established by sufficient proof premised on competent evidence. The court properly exercised its discretion in finding the defendant in contempt on that ground. At the same time, the court's finding of contempt regarding the defendant's failure to pay extracurricular activity expenses cannot stand.

### III

The defendant's final claim challenges the award of attorney's fees and costs rendered by the court. The court was empowered to award such fees pursuant to paragraph twenty-nine of the separation agreement. Furthermore, "General Statutes § 46b-87 provides that the court may award attorney's fees to the prevailing party in a contempt proceeding. The award of attorney's fees in contempt proceedings is within the discretion of the court."[4] *Esposito* v. *Esposito*, 71 Conn. App. 744, 748, 804 A.2d 846 (2002). The court did not abuse its discretion in this instance.

The judgment is reversed only as to the finding of contempt to the extent that it is based on the defendant's failure to pay extracurricular activity expenses and the case is remanded with direction to vacate that finding. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[4] To the extent that the defendant claims that the court failed to specify the precise basis for its award of attorney's fees, the responsibility for perfecting the record was his. See Practice Book §§ 61-10 and 66-5; *Fantasia* v. *Milford Fastening Systems*, supra, 86 Conn. App. 283.