**ALBURN, et, Plaintiffs, v UNION TRUST COMPANY, et, Defendants, and BURDICK, et, Intervening Defendants.**

Common Pleas Court, Cuyahoga County

No. 563819.   Decided December 29, 1947.

Horwitz, Keifer & Harmel, Cleveland, Bricker, Marburger, Evatt & Barton, Columbus, and Cary R. Alburn, Cleveland, for plaintiffs.

Jones, Day, Cockley & Reavis, Cleveland, for Defendant Citizens Building Company; for Defendant The Cleveland Trust Company, Trustee; Hugh S. Jenkins, Atty. Genl., Howard F. Burns, Special Counsel, Thomas E. Hann, Special Counsel, for Earl H. Cook, Supt. of Banks; Thompson, Hine & Flory, for National City Bank, Trustee, defendant; H. O. Ziegler for Union Properties Co.; for defendants.

Morley, Stickle, Keeley & Murphy, Cleveland, for intervening defendants.

## MEMORANDUM OPINION

By KOVACHY, J:

This is an action for a declaratory judgment.

Plaintiffs in their petitions say that they are the owners of $43,000 of the Convenience Par Value of Land Trust Certificaites of Equitable ownership of the so-called Union Mortgage (Citizens Building) Land Trust of Cleveland, Ohio, - - - and bring this action not only in their own behalf but on behalf of the other holders of said Land Trust Certificates, all of whom have a common interest with plaintiffs in the questions and subject matter of this action and the relief sought for, and are so numerous that it is impracticable to bring them all before the Court.

The Defendant, the National City Bank of Cleveland - - -. has been acting, since October, 1933, as Trustee under a certain purported agreement and declaration of trust dated October 15th, 1924, between the Union Trust Company of Cleveland,

Ohio, and such other persons, partnerships, associations and corporations as became parties thereto by the acceptance of Land Trust Certificates of Equitable Ownership issued thereunder.

That the Union Trust Company - - - was taken over for liquidation by the Superintendent of Banks of the State of Ohio, on June 15th, 1933.

H. Earl Cook, the Superintendent of Banks - - - is in charge of the liquidation of the said Union Trust Company, and he and his predecessors in office have, ever since June 15, 1933, been liquidating the property and business of said bank.

As such Superintendent of Banks, said H. Earl Cook has a right and title in and to all the property and assets belonging to the Union Trust Company, excepting such as have been transferred and conveyed by him, or his predecessors in office under a plan of reorganization, to Union Properties, Inc.

For some time prior to August 15th, 1924, the Union Trust Company owned certain real estate upon which is situated the building now commonly called "the Citizens Building" and formerly known as "the Union Mortgage Building."

The original cost of said property to the Union Trust Company was $310,000 in 1901.

On or about August 15th, 1924, the Union Trust Company sought to transfer the said property - - - to itself as Trustee under an instrument prepared or caused to be prepared by it, purporting to be an agreement and declaration of trust between the Union Trust Company as Trustee, and such other persons, partnerships, associations, or corporations, as might become parties thereto by the acceptance of Land Trust Certificates of Equitable Ownership described therein and issued thereunder.

The Union Trust Company signed said agreement as "Trustee" and thereby sought to settle upon itself as trustee for the use and benefit of said Certificate holders the real estate hereinbefore described.

Under Article II of said instrument it is provided that the equitable ownership and beneficial interest in the property of the trust estate was divided into 2,000 equal shares represented by certificates designated as "Land Trust Certificates of Equitable Ownership in Union Mortgage Building Property in Cleveland, Ohio, leased to the Union Square Company."

- ' - - the Union Trust Company sold said Land Trust Certificates to various of its customers at or over par thereby receiving for said property the total sum of $2,005,906.53, thereby deriving a profit from the creation of the trust in excess of $1,695,000.

The Union Trust Company also retained to. itself in perpetuity all income accruing from the property in the future in excess of $110,000 annually. At the time of the purported creation of the trust the underwriting lease on such property, dated June 25, 1923, provided an income of $120,000 annually for a term of 99 years renewable forever. Also by the terms of said purported trust instrument the Union Trust Company further reserved to itself the additional sum of $3,600 per annum.

Plaintiffs are informed and therefore aver that said 2,090 shares represented by said Land Trust Certificates are still outstanding.

On or about October 31, 1933, the then acting Superintendent of Banks in Charge of the Liquidation of the Union Trust Company, tendered the resignation of the Union Trust Company as "Trustee" of said purported trust and defendant, the National City Bank of Cleveland; was appointed "Successor Trustee." Since that time the National City Bank of Cleveland has purported to act as "Successor Trustee" under deeds and instruments executed and delivered by said Superintendent of Banks as Liquidator of the Union Trust Company to the said, the National City Bank of Cleveland, purporting to convey the "trust" property to the National City Bank of Cleveland as such purported "Successor Trustee."

On or about April 24, 1935, the Supreme Court of Ohio decided the case of **Ulmer v Fulton, 129 Oh St 323,** in which it held that a trust similar to that hereinbefore described was void upon the grounds that a bank and trust company in the state of Ohio had no authority under the statutes of the state of Ohio to create such a trust and that the creation of such a trust was opposed to the public policy of the state.

Thereafter, the. Supreme Court affirmed its decision of **Ulmer v Fulton, supra,** in the case of **Haggerty v Squire, Supt., of Banks, 137 Oh St, 207.**

Following the said decision of the Supreme Court of Ohio, the then acting Superintendent of Banks of the State of Ohio sent the following letter to all banks in Ohio at the time qualified as trust companies:

"STATE OF OHIO
DIVISION OF BANKS
COLUMBUS

June 17; 1935,

"Gentlemen:

"As you are probably aware, the Supreme Court of Ohio in a decision rendered recently in case styled 'Ulmer versus

Fulton, Superintendent of Banks' has held that a bank and trust company has not the legal right to create a trust out of assets which it owns and sells participations therein.

"While the case referred to is one growing out of the liquidation of a closed bank and trust company, nevertheless I recognize that the opinion as announced therein will necessitate in open banks and trust companies the retirement of certificates of participation or like instruments issued in connection with alleged trusts created out of assets belonging to such banks and trust companies as have issued the same.

"In compliance with the rule of law laid down by the Supreme Court, it will be necessary for all so-called participation trusts, created out of assets belonging to such bank or trust company, to be promptly terminated. As I understand this case, the holders of the participation certificates or other evidence of debt, are general creditors of the bank or trust company having issued the same and the assets against which the same have been so issued are assets of said bank or trust company and must appear as such on its books, records and reports.

"If the law as determined by the Supreme Court of Ohio in the case of Ulmer versus Fulton, Superintendent of Banks, is applicable to any so-called trust in your institution, kindly see that full compliance with the law is promptly had and I will appreciate immediate advice relative to the progress being made in accordance therewith.

"Yours very truly,
"S. H. Squire,
"Superintendent of Banks."

Thereafter, the then acting Superintendent of Banks of the State of Ohio sent the following letter to defendant, the National City Bank of Cleveland with reference to the purported trust hereinbefore described:

"Liquidation of
THE UNION TRUST CO.
Cleveland, Ohio

August 3, 1936,

"The National City Bank of Cleveland
Cleveland, Ohio.
"Gentlemen:

"Under date of October 16, 1933, you were appointed by the Common Pleas Court of Cuyahoga County as Successor Trustee under the Agreement and Declaration of Trust dated

August 15, 1924, by and between the Union Trust Company and the holders of land trust certificates of equitable ownership in the premises described in a certain indenture of lease from The Union Trust Company to The Union Square Company dated June 25, 1923, and recorded in Volume 127, Pages 266-276 of Cuyahoga County Records of Leases. The case of **Ulmer v Fulton, Superintendent of Banks, 129 Oh St, 323,** has raised the question as to whether or not I have an interest in said premises under the rule of law set forth in that decision, and there is also the question as to what, if any, my interest is under the terms of said Agreement and Declaration of Trust dated August 15, 1924. Neither my interest in said Citizens Building property, if any, nor the rights of the holders of certificates of equitable ownership issued under said Agreement and Declaration of Trust dated August 15, 1924, have as yet been determined. Until such time as such rights and interests are determined, it is mutually to our advantage that the value of said premises be maintained and that as much income as possible shall be derived therefrom.

"Accordingly, I hereby agree that until such rights and interests are determined, The National City Bank of Cleveland in its capacity as Successor-Trustee under said Agreement and Declaration of Trust dated August 15, 1924, may take such steps and perform such acts as it, in its discretion, may deem advisable to preserve or enhance the value of said Citizens Building property or to obtain income therefrom, including, if such steps seem advisable, the termination of said lease of June 24, 1923, hereinabove referred to, and the taking of possession of said property, and including the making, ratification or consent to leases or modifications of leases of said premises or portions thereof for a term of three years or less, and such leases or modifications of leases for a term of more than three years, the terms of which I shall hereafter approve in writing, and including such steps and acts incidental to the management of said property, it being understood between us that the taking of such steps and the doing of such acts shall be without prejudice to the rights of the undersigned or of any holder of a land trust certificate of equitable ownership issued under said Agreement and Declaration of Trust dated August 15, 1924, or of The National City Bank of Cleveland in its capacity as such Successor Trustee or otherwise.

"It is further understood that in the event it is finally determined this parcel of real estate is an asset of The Union Trust Company, I will honor all leases made by you as Suc-

cessor Trustee covering a term of three years or less and those covering a term of more than three years, which I shall hereafter in writing approve.

"Very truly yours,

"S. H. Squire,
Superintendent of Banks of the State of Ohio, in Charge of the Liquidation of the Union Trust Company.

By G. H. Robertson,
Special Deputy Supt. of Banks."

Plaintiffs allege that the validity of the aforesaid purported trust has never been considered or determined by any court.

Under the laws as announced by the Supreme Court of Ohio and by reason of said letters hereinbefore set forth of the Superintendent of Banks, the validity of the aforesaid purported trust agreement is doubtful and there is serious doubt:

1. Whether or not the title to the property of the trust ever passed to the Union Trust Company as Trustee and thereafter to The National City Bank of Cleveland as Successor-Trustee, and

2. Whether or not the land trust certificates have any validity, and

3. Whether or not the holders of such land trust certificates have any rights whatever under such purported trust indenture or contract.

This uncertainty as to the validity of the contract under which the land trust certificates were issued seriously affects their value and their marketability and leaves open to question the nature of the rights which the holders of said land trust certificates have with regard to said property.

The Union Trust Company had leased the property, constituting the trust estate to the Union Square Company by indenture of lease - - - on June 25, 1923, for a term of 99 years renewable forever - - -. Subsequently, the Citizens Building Company acquired and still owns the interest of the Union Square Company as leasee of such lease, - - -. Said leasehold estate is encumbered by a mortgage to the defendant, the Cleveland Trust Company as Trustee under an Agree-

ment and Declaration of Trust dated January 31, 1931, - - - securing an issue of $1,212,200 face value of bonds issued by the Citizens Building Company, of which substantially all are outstanding. Said bonds have been in default for a long period of time.

There is now pending in the Court of Common Pleas an action brought by the National City Bank of Cleveland as such purported Trustee, to foreclose the said lease of June 25, 1923. In the event that the said lease is ordered foreclosed, then some disposition will have to be made of the property either by sale of the present lease or by negotiating a new lease, or otherwise. In order to enable this to be done most advantageously for the holders of the said land trust certificates, it is necessary that the title to the property be clear and the question of the validity of the said purported trust made by the Union Trust Company be determined. It is therefore necessary to determine whether or not the trustee has title to said property or whether by reason of the decisions hereinabove described and the law of the State of Ohio, the title to said property is in the Union Trust Company or in the Superintendent of Banks of the State of Ohio as liquidator of the Union Trust Company.

WHEREFORE, Plaintiffs pray that the Court render a declaratory judgment determining whether or not the said purported trust is valid or invalid.

The plaintiffs further pray that upon and in connection with the rendition of said declaratory judgment, the Court order all relief necessary or proper to afford to the Land Trust Certificate holders a complete remedy upon such rights as the Court may determine the Certificate Holders have against any or all of the defendants herein, and that the Court grant the plaintiffs such other relief as equity and the nature of the case require.

*    *    *    *    *

The Court has permitted Harold B. Burdick, the First Central Trust Company, Trustee under the Deed of Trust of Frederick W. Work, Henry W. Mathews, Alice L. Scott, and Ralph Stickle, Successor Trustee under the Will of Andrew J. Bause, Deceased, on behalf of themselves and the owners and holders of Land Trust Certificates of Equitable Ownership in the property described in the petition, and for and on behalf of the other Land Trust Certificate Holders who are too numerous to be brought before the Court, to intervene as parties defendant.

The Cleveland Trust Company as Trustee under Agreement of June 26, 1931, with Thomas Seelye Arms, as from time

to time modified, The Cleveland Trust Company as Trustee under Agreement of July 15, 1926, with Jacob D. Cox, Jr., as from time to time modified, The Cleveland Trust Company as Trustee under Agreement of May 8, 1944, with Margaret W. Eastwood, The Cleveland Trust Company as Successor Trustee of the Trusts created by Agreement of May 14, 1927, between Blanche Murphy Halle and The Union Trust Company as from time to time modified, The Cleveland Trust Company as Agent for Brice Ketchum under Agreement of January 10, 1935, the Cleveland Trust Company as Successor Trustee of the Trusts created by Agreement of January 23, 1933, between Lena Konigelow and The Union Trust Company, The Cleveland Trust Company as Trustee under Agreement of July 12, 1929, with Edward L. Whittemore, The Cleveland Trust Company as Successor Co-Trustee of the Trusts created by the Last Will and Testament of James P. Loomis, Deceased, The Cleveland Trust Company as Successor Trustee of the Trusts created by the Last Will and Testament of Louise M. Weideman, Deceased, The Cleveland Trust Company as Successor Trustee of the Trusts created by the Last Will and Testament of F. J. Woodworth, Deceased, The Cleveland Trust Company as Trustee under Agreement of January 8, 1920, with George H. Boyd, as from time to time modified, The Cleveland Trust Company as Successor Trustee of the Trusts created by Agreement of March 28, 1921, between Louise P. Erskine and The Union Trust Company, The Cleveland Trust Company as Successor Trustee of the Trusts created by the Last Will and Testament of C. Lyell Burridge, Deceased, and The Cleveland Trust Company as Successor Trustee under the Will of Charles E. Squires, Deceased, were denied leave to be made parties defendant.

The defendants the Cleveland Trust Company, Trustee, and the Citizens Building Company have filed answers to the petition. Defendants the National City Bank of Cleveland, Trustee, H. Earl Cook, Superintendent of Banks, the Union Trust Company, Union Properties Incorporated, and Harold B. Burdick, et al., have filed demurrers to plaintiffs' petition. The National City Bank demurs to the petition of the plaintiffs on the grounds—

"1. That no cause of action is stated against this demurring defendant;

"2. That the Court has no jurisdiction of the subject matter of the action;

"3. That the action is barred by the Statute of Limitation;

"4. That the action is barred by laches."

H. Earl Cook, Superintendent of Banks and the Union Trust Company demur to the petition of plaintiffs on the grounds—

"1. That the Court has no jurisdiction of the subject of the action;

"2. That the petition does not state facts which show a cause of action."

Union Properties, Inc., demur on the grounds—

"1. That the petition does not state facts which show a cause of action;

"2. The Court has no jurisdiction of the subject of the action."

Harold B. Burdick, et al., demur on the grounds—

"1. That the petition does not state facts which show a cause of action;

"2. That the Court has no jurisdiction of the subject of the petition;

"3. That the action was not brought within the time limited for the commencement of such actions."

Briefs and reply briefs have been filed by all the demurring defendants. The plaintiffs filed an answer brief and a supplemental answer brief to the reply briefs of the demurring defendants.

An oral hearing on the demurrers was had giving all parties interested full opportunity to present arguments thereon. The Court has studied all briefs submitted and given the matter full consideration.

The plaintiffs claim that under the facts set out in their petition, and on the basis of the rulings of the Supreme Court of Ohio in the case of **Ulmer v Fulton, 129 Oh St, 323,** affirmed in the case of **Haggerty v Squire, Superintendent of Banks, 137 Oh St, 207,** the Agreement and Declaration of Trust dated August 15, 1924, between the Union Trust Company of Cleveland, Ohio, and the holders of Land Trust Certificates of Equitable Ownership in the Citizens Building, is invalid and void.

Some of the plaintiffs herein have, for and on behalf of themselves as well as for and on behalf of the other Land Trust Certificate holders, sought an adjudication of the validity of said Agreement and Declaration of Trust in two previous lawsuits, namely:

In **Stanley, et al., v Hart, Common Pleas Court, Cuyahoga County,** No. 515,986; **Court of Appeals,** No. 19058; affirmed as a result of an evenly divided Supreme Court, No. 29520, some of the plaintiffs herein on behalf of all certificate holders sued The National City Bank, Successor Trustee, William L. Hart, Superintendent of Banks of the State of Ohio, The Union Trust Company and The Union Properties, Inc., to set aside and void the agreement and declaration of trust described in this petition, for a money judgment and an order of the court requiring the Superintendent to allow a general claim against the assets of The Union Trust Company in liquidation in favor of all certificate holders in the amount for which judgment is sought. The validity of the trust was not passed upon by the court. The court merely ruled that the failure of the land trust certificate holders to comply with the provision of the McIntyre Act precluded them from asserting claims as general creditors against The Union Trust Company in liquidation.

In **State, ex rel., Stanley v Cook, Superintendent of Banks, et al.,** some of the plaintiffs herein as relators, on behalf of all certificate holders, brought an original case in mandamus in the **Supreme Court of Ohio, No. 30007, 146 Oh St 348,** seeking to compel H. Earl Cook, the Superintendent of Banks, to take action to set aside as void the agreement and declaration of trust described in this petition. A divided court held that mandamus would not lie against the Superintendent of Banks and judgment was rendered in favor of the defendants.

Plaintiffs say in their Answer Brief—

"At the outset it should be borne in mind that the petition for declaratory judgment filed herein merely seeks an adjudication as to the validity of the trust described in the petition - - -.

"Despite the several attempts made by some of the plaintiffs herein in previous litigation - - - to have this question determined, thus far no court has ever passed on, or purported to pass upon, the validity of this Trust."

It is unquestionably true that the validity of the Trust under consideration in this case has never been passed upon on its merits by any court. It is likewise true that the grava-

men of this action is the adjudication of the validity of the mentioned Trust.

Plaintiffs, in the main, seek a determination of the validity or invalidity of the Trust in question.

To warrant this Court in making such determination the petition must allege facts which show the right of the plaintiffs to invoke the powers of the Court for such adjudication.

The roots of this Trust are in the Union Trust Company now under liquidation. Yet the plaintiffs in this action make no claim against the Liquidator of the Union Trust Company. They do, in their prayer, ask that "the Court order all relief necessary or proper to afford to the Land Trust Certificate holders a **complete** remedy - - -." (Emphasis ours.)

What remedy under the facts presented can they obtain?

If this trust be void **ab initio** as claimed by the plaintiffs, natural and complete justice would require that the $2,005,906.53 paid to the Union Trust Company under it be returned to the holders of the Land Trust Certificates with interest, less the amount distributed to such holders, the bank having been enriched by such amount. If the Union Trust Company were a going solvent institution it would be required to make such restoration, but being insolvent the rights of other persons are considered and protected, and its assets **must** be distributed according to the Banking Law of the State of Ohio. (Sec. 701-1 - to 714 GC.)

Under the settled law of the state, morever, the holders of these Certificates would be deemed **general creditors** of the Union Trust Company in liquidation. **Ulmer v Fulton, 129 Oh St, 323, Syl. 4:**

"Upon the insolvency of a bank and trust company which has attempted to create trusts out of its own securities and has sold participation certificates therein to the public, the holders of such participation certificates will be placed in the position of general creditors."

However, under the settled law in the matter, the holders of Land Trust Certificates in connection with the Trust under consideration here are **forever** barred from asserting claims as general creditors of the said Union Trust Company in liquidation. **Stanley et al., v Hart, 29 O. O., 35,** affirmed in **142 Oh St, 528, Syl. 5:**

"The failure of such Land Trust Certificate holders to comply with the provisions of the McIntyre Act (§710-92a GC) precludes them from asserting claims as general creditors against the bank."

**McIntyre Act, §710-92a GC:**

"At any time subsequent to the expiration of the date for filing claims as fixed by the Superintendent of Banks pursuant to the provisions of §710-90 GC, he may give notice by publication once a week for four consecutive weeks in a newspaper of general circulation in the county in which the principal office of such bank is located, requiring the presentation and proof of all general claims not filed and not appearing upon the books of the bank at a place and time to be fixed in such notice, which time shall be not less than sixty days subsequent to the date of the last publication of such notice.

"All claims not filed in accordance with the provisions hereof shall be **forever barred** from participation in any of the assets of such bank and such notice shall so state." (Emphasis ours.)

**National City Bank, Successor Trustee, v Guardian Trust Co., et al., 13 O. O., 21, affirmed 137 Oh St, 279:**

"Syl. 1. By the enactment of the Ohio Banking Act, §710-1 to 714 GC, the state has exercised its power to pre-empt the field in providing a specific, adequate, exclusive and constitutional method of procedure for the dissolution of banks and the liquidation of their assets, - - -. It is the duty of the Superintendent of Banks under said code provision, to conserve and administer the assets of the bank in liquidation for the benefit of all the creditors."

Plaintiffs say in their Supplemental Answer Brief:

"There are several methods whereby upon declaration that the trust is void and the certificates must be surrendered, the equity court can adequately protect the certificate holders - - -, the doctrine of recoupment is available - - -. Similarly the doctrine of unjust enrichment could be readily settled in the form of a constructive trust to inure to the benefit of the certificate holders."

With respect to the doctrine of recoupment, plaintiffs lose sight of the fact that they had an adequate and complete remedy at law under the Ohio Banking Act mentioned above had they seen fit to avail themselves of it by making a **timely** claim with the Liquidator of the Union Trust Company, the Superintendent of Banks, and that Equity Follows the Law.

In **Heard v Stamford, Cas, p. T. Talb.** 173, Lord Chancellor Talbot had the following to say:

"There are instances indeed in which a court of equity gives a remedy where the law gives none; but where a particular remedy is given by the law, **and that remedy is bounded and circumscribed by particular rules** it would be very improper for this court to take it up where the law leaves it and to extend it further than the law allows." (Emphasis ours.)

In **Mogniac et al., v Thompson, 15 Howard (U. S.)** 281:

"Wherever the rights or the situation of parties are clearly defined and established by law, equity has no power to change or unsettle those rights or that situation, but in all such instances the maxim Equitas Sequitus Legum is strictly applicable."

. In **Rombo et al., v First State Bank of Argentine,** 128 Pac. 182, **Syl.** 2:

"Equity must follow the law in all cases in which the legislative has intervened and prescribed rules of law which govern the rights of parties."

The Supreme Court of California held the following in **Harry Rosenberg v Frank L. Lawrence, et al., Respondent; 10 Cal. (2d)** 591, **Syl.** 4:

While a court of equity may exercise broad powers in applying equitable remedies, it may not create new substantive rights under the guise of doing equity."

It is therefore clear that if this trust were declared invalid and the trust res became a Union Trust Company asset, equity could give the holders of the Land Trust Certificates no relief so far as reaching funds or assets of the Union Trust Company as general creditors are concerned. They are **forever barred** in equity as well as in law in that respect.

What of the Doctrine of Unjust Enrichment?

**Words & Phrases,** p. 272:

"The Doctrine of Unjust Enrichment is that a person shall not be allowed to profit or enrich himself inequitably at another's expense."

If the trust is declared void in this case the title to the trust res would finally rest in the Liquidator of the Union Trust Company, the Superintendent of Banks. (Sec. 710-91 GC.)

The very most that a Court of equity could do under the facts and circumstances of this case would be to declare the Superintendent of Banks the Trustee of the Citizens Building for the benefit of all holders of Land Trust Certificates under the Doctrine of Unjust Enrichment.

**Buettner Bros. v Goodhope Missionary Baptist Church, 245 Ala., 553:**

"A suit to fasten a constructive trust on the defendant must proceed on the theory that he has title to something which he cannot in good conscience hold against the plaintiff."

**Bogart's Equity Jurisprudence, par. 491:**

"Constructive or involuntary trusts in which the parties have exercised no intent to have a trust nor does the court infer or presume that any such intent existed, but the court uses the trust terminology as the most convenient method of working out justice and preventing one party from unjustly enriching himself at the expense of the other."

**26 R. C. L., p. 1236:**

"It is a well-settled general rule that if one person obtains the legal title to property - - - in any - - - unconscientious manner so that he cannot equitably retain the property which really belongs to another, equity carries out its theory of a total ownership equitable and legal by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owners."

130 U. S., 122; 130 U. S., 684; 151 U. S., 1; 86 Ala., 357; 148 Cal., 149; 169 N. Y., 555; 188 Pa. St. 330.

The net effect of such a judgment, however, would be the supplanting of the present trustee, the National City Bank, with the Superintendent of Banks. When you consider that 87.6% of the holders of Certificates (all who voted) signified their approval of the Successor Trustee; that such Successor Trustee has been acting as Trustee and administering the

affairs of the Trust since its appointment by this Court in October, 1933, together with the fact that the Superintendent of Banks in all probability would not desire the added burdens to his duties, such consummation would hardly appear desirable or sensible. To say the least it would be an idle and vain thing which a court of equity cannot be called upon to do.

Foster v Mansfield, Coldwater & Lake Mich, R. R. Co., 146 U. S., 88, was an appeal to set aside a foreclosure sale of a railroad under a mortgage, on the ground of fraud and collusion. The Supreme Court of the United States held: Syl 4:

"In such a suit to set aside a foreclosure sale of a railroad if plaintiff does not show at least a probability of a personal advantage to himself by its being done, it is a circumstance against him, as a court of equity is not called upon to do a vain thing."

The plaintiffs in their petition do not claim that anyone but themselves are asserting the invalidity of the Trust.

The Superintendent of Banks, who by law represents the creditors of the Union Trust Company had some doubt about it back in August, 1936, as appears from the letter he wrote to the National City Bank. However, he did nothing about it and later successfully resisted a lawsuit against him in mandamus in the Supreme Court of Ohio, instituted to compel him to take action to set the trust aside, showing his total lack of interest in the matter.

Plaintiffs say that:

"It is necessary that the title to the property be clear,"

in case foreclosure of the lease of January 25, 1923, is ordered and a sale be found most advantageous for the holders of said Land Trust Certificates. No one but they question the title conveyed to the Successor Trustee "under deeds and instruments executed and delivered by said Superintendent of Banks as Liquidator of the Union Trust Company to the National City Bank of Cleveland" under an order of this Court in the liquidation proceedings.

Plaintiffs also claim that:

"This uncertainty as to the validity of the contract - - - seriously affects their value and their marketability and leaves open to question the nature of the rights that the holders of said Land Trust Certificates have with regard to said property."

It appears to the Court that so far as this petition discloses the plaintiffs are the only ones entertaining any uncertainty as to the validity of the contract of trust, and as to "the nature of the rights that the holders of said Land Trust Certificates have with regard to said property" 23 years of continuous participation should be a long enough time to dissipate such question. Moreover, Union Trust Company has now been closed fourteen and a half years, and the Successor-Trustee has been administering the affairs of the Trust for over fourteen years.

Under these circumstances do the plaintiffs have a good cause of action?

The Uniform Declaratory Judgment Act is found in §12102-1 to 12102-16 GC. Under the provisions of §12102-2:

"Any person interested under a - - - written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by - - - contract - - - may have determined any question of construction or validity arising under the - - - contract - - - and obtain a declaration of rights, status or other legal relations thereunder."

The Supreme Court of Ohio, in **Schaefer v The First National Bank, 134 Oh St, 511,** held the following:

"Syl. 3. An action for a declaratory judgment may be alternative to other remedies in those cases in which the court, in the exercise of sound discretion finds that the action is within the spirit of the Uniform Declaratory Judgment Act and a real controversy between adverse parties exists which is justiciable in character and speedy relief is necessary to the preservation of rights that may be otherwise impaired or lost."

Does a **real controversy** between adverse parties exist in this cause, which is **justiciable in character** under the facts set forth in the petition? That a controversy exists between adverse parties appears evident from the fact that this action is the third filed by some of the plaintiffs, herein against some or all of the defendants questioning the validity of this trust. Whether the controversy is real and justiciable in character is the crux of our situation.

**Webster's New International Dictionary.**
"Justiciable,-adj. (O. F.) Liable to trial in a court of justice, as a justiciable dispute."

**Bouvier's Law Dictionary,** Vol. 2. "Justiciable-
Such a question or matter as may properly come before a tribunal for decision."

**Words & Phrases:** "To obtain declaratory judgment 'justiciable controversy' must exist between persons whose interests are adverse, **plaintiff must have a legally protectible interest in controversy - - -.**" (Emphasis ours.)

**Declaratory Judgments, 2nd Ed. Borchard:**
P. 40: (Emphasis ours.)

**" 'Actual' Controversy**
"- - - The United States Supreme Court, in its most elaborate views in this connection, has remarked that the limitation of jurisdiction to 'cases of actual controversy' is designed to preserve constitutional requirements; that the word 'actual' is one of 'emphasis rather than definition'; that 'controversy' contemplates a 'justiciable controversy,' hence 'appropriate for judicial determination,' and is thus 'distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot.' The controversy must be 'definite and concrete, touching the legal relations of parties having adverse legal interests.' **It must be a 'real and substantial controversy admitting of specific relief through a decree of a conclusive character,** as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."

P 33-36:

**"Justiciability**
"Justiciability is the necessary condition of judicial relief. It is that which the term 'case' or 'controversy' is designed to insure, - - -. What then are the 'necessary features' of justiciability? - - - Expediency and a desire not to function in the abstract, but to decide only concrete contested issues conclusively affecting adversary parties in interest, have induced a refusal to render advisory opinions or decide moot cases. Actions or opinions are denominated 'advisory,' when there is **an insufficient interest in the plaintiff** or defendant **to justify judicial determination, where the judgment sought**

would not constitute specific relief to a litigant or affect legal relations - - -. The issue - - - has ceased to be live or practical, because the facts have changed, either by settlement of the controversy or by alteration in the circumstances of the parties or subject matter, so as to make the judgment not decisive or controlling of actual and contested rights, but a pronouncement having academic interest only. Such issues cannot be determined by declaratory judgment any more than by another judgment.

"The fact that the plaintiff's desires are thwarted by its own doubts, - - - may or may not describe a hypothetical or moot case, depending on the circumstances. In bills of peace, quia timet, to quiet title, of interpleader, and other equitable proceedings, in actions to declare transactions (such as marriages) or instruments (such as bonds or deeds or titles) or privileges and powers (such as claims under a lease) valid or void, the plaintiff's action may be motivated by his own doubts or the denial or fears of third parties as to his right or title, but there is no justiciable issue until he translates his doubt into a claim of right and asserts it against a defendant having an interest in contesting it. When that happens, it is a justiciable controversy, regardless of its origin in the plaintiff's own doubts or the fears of others, and regardless of the form of action, declaratory or executory, in which the issue is presented. The question is, whether the plaintiff has a sufficient interest to warrant judicial protection."

Page 48:

"LEGAL INTEREST
"It is an essential condition of the right to invoke judicial relief that the plaintiff have a protectible interest. The fact that under declaratory procedure so many types of legal issues are presentable for determination which are incapable of any other form of relief, has imposed upon the courts at the outset the function of determining whether the facts justify the grant of judicial relief, and more particularly, whether the plaintiff has a 'legal interest' in the relief he seeks."

Page 18:

"So while it will be necessary to bear in mind the factual conditions of a petition for relief, perhaps attention should be concentrated on the interest that a petitioner has in judicial protection - - - that is to say, whether his rights have been de-

nied, challenged or jeopardized by person or event in such manner as to justify him in invoking judicial protection for their vindication. If that interest, economic or social in character, can and should be thus protected, we denominate it a 'legal interest.'

Page 514:

**"NULLITY**
**"Purpose of Action. - - -** The request for such declaration is usually made to escape the consequences of legality or validity, and where the plaintiff asks a declaration of the invalidity of his own contract, is a speedy method of bringing about a release from obstensible obligations. Where the plaintiff asserts the invalidity of the defendant's or a third persons contract, **its purpose is usually to obtain benefits of which he would otherwise be deprived** or to avoid losses which otherwise he might incur.

**1 Corpus Juris, Sec. p. 1023:**

"An action for a declaratory judgment generally may be maintained only for the purpose of determining and **declaring fixed legal rights where it will accomplish some useful purpose;** it cannot be invoked merely to try the issues - - -."

**1 Corpus Juris Sec. p. 1031 (11):**

"Consequential relief. To entitle the complainant to a declaratory judgment it should appear, from the facts alleged, that he has present rights against the persons whom he makes parties to the proceedings, with respect to which he may be entitled to some consequential relief either immediate or prospective; for if it appears that plaintiff can have no relief as against any party named as defendant, such party should not be forced into litigation **which can have no final result in favor of plaintiff."** (Emphasis ours.)

In 6 Atlantic Reporter, p. 777, Hanley et al., v Wetmore, et al., Supreme Court of Rhode Island, Syl. 4:

"Pub. St. R. I. Cap. 192, par. 22, providing that 'No suit in equity shall be defeated on the ground that a mere declaratory decree is sought and the court may make binding declarations of right in equity without granting consequential relief' cannot be held to authorize a declaratory decree in any suit

unless a case is stated in the appeal which shows a right to actual relief either immediate or prospective against the defendants."

It is clear from the above that these plaintiffs do not set out in their petition a controversy which is real and justiciable in character—not being in a position to derive any benefit to themselves and the other holders of certificates upon a determination of invalidity they do not have 'a legally protectible interest,' 'a right to a judgment which would constitute specific relief,' 'the declaring of fixed legal rights where it will accomplish some useful purpose' or 'any relief as against any party named as defendant which can have a final result in favor of plaintiff.'

A. L. Burdick, et al., intervening parties defendants, oppose the position of plaintiffs in this matter. They represent all holders of certificates similarly situated to themselves. It is significant that all certificate holders do not see eye to eye in a matter instituted ostensibly for the benefit of all. Can it be that the intervening defendants see more clearly the direction in which their best interests lie?

The holders of certificates have the beneficial ownership of a select piece of Cleveland real estate. The Successor Trustee is an outstanding and reputable banking concern. They are in as favorable a position as they can hope to be under all the circumstances present, and should LET WELL ENOUGH ALONE.

It therefore appears to the Court that the matter of the validity or invalidity of the Trust is now an abstract and academic question, and as such is not subject to the action of a court of justice.

For the foregoing reasons this Court is of the opinion that the petition falls short of containing allegations sufficient to the rendition of a declaratory judgment. There is not presented to the Court a justiciable controversy and thus the plaintiffs do not have a cause of action.

In view of the above holding it is unnecessary for the Court to discuss other grounds relied upon by the demurring defendants.

Demurrers are sustained and plaintiffs' exceptions noted.