Wesley R. Gard, appellee, v. John and Rose Razanskas, appellants.

No. 49248.

(Reported in 85 N.W.2d 612)

1334

A. H. Bolton, of Sioux City, for appellants.

Pizey, Sears & DeWitt, of Sioux City, for appellee.

WENNERSTRUM, J.—Plaintiff sought recovery of $1000 claiming there had been an unjust enrichment of the defendants. This contention is based on the theory the plaintiff had an option to purchase land of the defendants; that they, the defendants, refused to credit on the option contract the proceeds of an insurance payment received by reason of a fire and destruction of a barn and shed on the land, which loss occurred prior to the exercise of the option of purchase. The defendants denied the plaintiff had any right to the insurance proceeds under the option provision in the lease. They maintained the plaintiff, by making settlement for the full amount of the option agreement, waived any right to the proceeds of the insurance and was estopped to make any claim thereto. The trial court held the plaintiff was under compulsion to make settlement for the full amount of the contract price and was entitled to the recovery of the money which the defendants had received as the proceeds of the insurance loss. Judgment was entered against the defendants for the amount sought. They have appealed.

The lease agreement was entered into in October 1950 and included the period from March 1, 1951, to March 1, 1956. The provision of the lease which pertained to the option to purchase is as follows: "XII. In consideration of the leasing of said premises the first parties hereby grant to second party an option to purchase the real estate described herein for the sum of ten thousand ($10,000.00) dollars on any March 1st during the term of this lease, such option to be exercised by the second party giving to first parties written notice at least thirty (30) days

prior to the March 1 on which the second party elects to exercise such option."

The fire which resulted in the payment to the defendants of the proceeds from an insurance policy carried by them occurred on October 18, 1952. There is testimony by the plaintiff which is not denied by the defendants that one of the defendants stated the plaintiff might put up a new barn with the proceeds of the insurance but the defendants would have to confer with the company which held the mortgage. It is disclosed the plaintiff desired to improve the house and to use the insurance proceeds for that purpose rather than rebuilding the barn and shed. The plaintiff also testified that at a later date he talked with one of the defendants who advised him the company holding the mortgage would not permit the money to be used in remodeling the house; that it would have to be used for the rebuilding of the buildings covered by the policy and, if not so used, the insurance proceeds would have to be applied on the mortgage. The plaintiff also testified he advised one of the defendants if they, the defendants, were willing the plaintiff would fix the house with his own money and he would give them $9000 for the farm. It was also testified the plaintiff spent about $2500 and his own time in remodeling the house. The defendant does not deny he had a conversation with the plaintiff following the fire. Concerning this conversation or conversations he testified as follows: "After the fire I do not recall what conversation we had. I just told him (we would) have to use that insurance money to replace the buildings. I didn't have any conversation with him in regard to using the $1000 to apply on the mortgage. I told him if you figure on buying the farm and want to remodel the buildings that is up to you. I am not going to stand any of the costs."

There is no question the plaintiff exercised the option. There are letters from attorneys representing the parties which show there was a difference of opinion and controversy relative to any credit being given to the plaintiff by reason of the $1000 insurance payment. It is also shown the defendants refused to accept $9000 for the property and by reason of that fact the plaintiff paid the full amount of the $10,000 which was provided for in the option agreement.

The defendants objected to any testimony being introduced relative to the claimed conversations between parties following the fire and pertaining to how the insurance proceeds should be used. It was stated such claimed conversations were incompetent, an attempt to change and vary the terms of a written instrument; that the option merged in the deed and that there could be no change in the terms of the deed which was executed and in which the option merged.

I. The plaintiff maintained in his petition, in the trial court and in this court, the retention by the defendants of the insurance payment, and the refusal to apply the insurance payment on the amount due under the option agreement would result in unjust enrichment of the defendants. By reason of this contention we should ascertain what is meant by the term.

In the Restatement of the Law, Restitution, section 1, page 12, it is stated: "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." And in the comment on the foregoing statement it is also set forth: "A person is enriched if he has received a benefit. A person is unjustly enriched if the retention of the benefit would be unjust. A person obtains restitution when he is restored to the position he formerly occupied either by the return of something which he formerly had or by the receipt of its equivalent in money."

And applying the facts in the present case to the statements herein set out we conclude the option in the lease agreement contemplated the conveyance to the optionee of the improvements on the land at the time of entering into the option lease. If the lessors and optionors were to receive the full amount of the option contract plus the insurance proceeds they would, in our judgment, be receiving a benefit in excess of that contemplated in the agreement and thereby be unjustly enriched. If the option lessee is restored to the position he occupied at the time of entering into this agreement he would receive the buildings on the land or the equivalent. Under the facts in this case the equivalent would be the insurance proceeds resulting by reason of the fire.

II. Although this court has not passed on the rights of an option purchaser under facts similar to the present case we

have considered the question here involved in Brady v. Welsh, 200 Iowa 44, 46, 204 N.W. 235, 236, 40 A. L. R. 603, where we stated: "There can be no question, under all of the authorities, but that both the vendor and the vendee in a contract of sale by the terms of which the equitable title passes to the vendee, have an insurable interest in the property. Depreciation in the value thereof, whether by reason of fire which consumes the buildings or by other causes, must be borne by the vendee; likewise, any appreciation in value of the property belongs to him. The only loss suffered by appellee [vendor] herein was such depreciation in his security as resulted from the destruction of the building by fire. He has been paid the full purchase price of the farm, and, if permitted to retain the money received by him as insurance, he will profit to that extent. The rule that the vendor who receives insurance money paid to him in settlement of the loss of a building by fire upon premises sold by him under an executory contract to convey after full payment of the purchase price, holds and retains the same as trustee for the vendee, is a wholesome one, and tends to effect justice between the parties."

In the cited case the vendee in a sales agreement sought recovery from the vendor of the insurance proceeds paid by reason of a fire which destroyed a dwelling house on the premises. Although in the present case we are concerned with an option agreement to purchase we consider the reasoning should be the same.

In Gunsch v. Gunsch (1955) N. D., 71 N.W.2d 623, 630, we observe a situation similar to the Brady case. It is there stated: "The destruction of the building would not entitle the vendee to abate the purchase price to the extent of the loss. On the other hand, it is clear that the vendor should not be allowed to collect the full purchase price and at the same time collect and keep the proceeds of an insurance policy on the destroyed building. The contract required that the buildings at all times be kept insured for both fire and windstorm in the sum of $4000 with a loss payable clause in favor of the vendor. When a loss occurred for which the vendor collected insurance, the amount so collected must be applied in reduction of the amount due on the contract. This is in accordance with the general rule."

We shall not review the authorities and cases which hold an option to purchase does not give the optionee the right to have insurance proceeds applied on the contract purchase price of property if the option is exercised. 55 Am. Jur., Vendor and Purchaser, section 406, page 827. Despite the authorities cited it is also stated in the cited section: "However, in a number of cases the holder of an option to purchase land has been held entitled to the proceeds of insurance credited upon the purchase price, where he elects to exercise the option after buildings on the premises are burned. While in many cases this result apparently is attributable to differences in the facts and circumstances involved in the particular case, this is not always true. Some cases apparently take the position that one holding an option for the purchase of land which he elects to exercise after the destruction of the buildings is in the same position regarding his right to the insurance money as the purchaser in a contract for the sale of the land."

We conclude this last statement is applicable to the facts in the present case, and in the light of our holding in the Brady v. Welsh case, supra, to which we adhere, we hold the plaintiff is entitled to the credit sought.

Cases which support our announced conclusions include: Nelson Properties, Inc., v. Denham, 123 Fla. 382, 167 So. 35, 36, involving insurance proceeds resulting from a fire which destroyed property covered by lease with option to purchase; Dolan v. Spencer, 92 Colo. 389, 21 P.2d 411, 412, wherein it is disclosed leased property with option to purchase was burned; Skinner & Sons' Ship-Building etc. Co. v. Houghton, 92 Md. 68, 48 A. 85, 87, 84 Am. St. Rep. 485, wherein it is also shown there had been a fire and the destruction of buildings on property included in an option agreement to purchase; Williams v. Lilley, 67 Conn. 50, 53, 34 A. 765, 769, 37 L. R. A. 150, a further case relative to insurance proceeds paid by reason of fire which destroyed the property mentioned in an option agreement to purchase. Also bearing on the question herein considered see Cullen & Vaughn Co. v. Bender Co., 122 Ohio St. 82, 170 N.E. 633, 68 A. L. R. 1332; Russell v. Elliott, 45 S. D. 184, 186 N.W. 824, 22 A. L. R. 556.

■ III. As previously noted, the defendants contend the plaintiff by accepting the deed and paying the full purchase price waived his right to the credit of the proceeds from the insurance payment and is estopped from seeking the recovery of it.

It should be kept in mind the evidence shows plaintiff had previously entered into a contract for the sale of the property. This fact is shown by virtue of an escrow agreement attached to a proposed settlement contract submitted to the defendants and pertaining in part to the claimed credit of $1000. By reason of the attitude of the defendants in refusing to consider the claim for credit the plaintiff was under compulsion to make the full payment. As further evidence of the fact the plaintiff was acting under compulsion, it is shown in the record the defendants, after the agreement relative to the purchase and the proposed credit of $1000 was submitted to them, shortly thereafter served notice on the plaintiff of the termination of the lease and demanding possession at the termination of the lease year. We are unable to hold the plaintiff waived his right to make claim for the amount of the insurance received by the defendants.

In 40 Am. Jur., Payment, section 173, pages 832, 833, support is given the contention of the plaintiff where it is stated: "It has been held that money paid to complete a contract for the sale of land, in excess of what is actually due for purchase money and interest thereon, under a threat by the vendor to rescind, is such an involuntary payment as to raise a fictional promise by the vendors to repay."

And in 70 C. J. S., Payment, section 147, page 353: "Likewise, a payment may be considered as made under compulsion * * * where payment is made on a wrongful demand to save the party paying from some great or irreparable mischief or damage, from which he could not otherwise be saved; * * *."

We hold the plaintiff was acting under compulsion and by reason of that fact it cannot be held he waived his rights to seek recovery of the insurance proceeds and is estopped to make claim for the additional amount he paid.

■ IV. The objections of the defendants to the plaintiff's testimony relative to the claimed agreement regarding the credit

of the insurance proceeds on the purchase price appear to us to be without merit. The plaintiff testified:

"In my conversation with Mr. Razanskas shortly after the fire I told him I would exercise the option as soon as I got the money and it would be for $9000. He said that was alright, he didn't need the money right then but as soon as I got it he would take it. In the spring of 1955 I told Mr. Razanskas I would like to pay him off and complete the deal that summer, that I had made arrangements at the Toy Bank to borrow $7000 and that I had a chance to sell the farm on contract to another party where I could raise the $2000 additional and as soon as they could get that money raised we would complete the contract."

The trial court had the witnesses before it and heard their testimony.

Under all the facts presented we conclude there was basis for believing the plaintiff's version. This is borne out because the plaintiff expended approximately $2500 in remodeling the house. It would not seem he would do so if he had not had an understanding such as he mentioned. There is also testimony one of the defendants went to the farm and conversed with the plaintiff relative to a contemplated loan to be obtained by the party to whom the plaintiff had sold the farm. The plaintiff's evidence related to a subsequent oral agreement between the parties to the lease and the parol-evidence rule is not applicable. Baie v. Nordstrom, 238 Iowa 866, 869, 29 N.W.2d 211; In re Estate of Lamb v. Morrow, 140 Iowa 89, 96, 117 N.W. 1118, 18 L. R. A., N. S. 226; 12 Am. Jur., Contracts, section 428, pages 1006, 1007.

V.   This action being one in equity we conclude it would be inequitable not to allow the plaintiff credit of the insurance proceeds on the contract price. Not to do so would unjustly enrich the defendants and result in a loss to the plaintiff. The cited authorities support our conclusions and the holding of the trial court. We therefore affirm.—Affirmed.

All JUSTICES concur.