SCHILDBERG ROCK PRODUCTS Co., INC., appellee, v. WILLIAM R. BROOKS et al., appellants.

No. 51933.

(Reported in 140 N.W.2d 132)

760

FEBRUARY 8, 1966.

Hess, Peters & Sulhoff, of Council Bluffs, for appellants.

Smith, Peterson, Beckman & Willson, of Council Bluffs, and Swift, Brown & Schaetzle, of Des Moines, for appellee.

GARFIELD, C. J.—This is an action in equity by Schildberg Rock Products Company, Inc., formerly Missouri Valley Limestone Company, Inc., to require defendants Brooks and Kinsel, former officers and directors of the corporation, to assign a mineral lease on land obtained by them in alleged breach of their fiduciary duty toward the corporation. Trial to the court resulted in decree as prayed from which defendants have appealed.

Our review is de novo. Rule 334, Rules of Civil Procedure. However, especially when considering the credibility of witnesses, we give weight to the fact findings of the trial court but we are not bound by them. Authorities for this are unnecessary. Rule 344(f)7, R. C. P.

Missouri Valley Limestone Company, Inc. (herein called Missouri Valley or the company), was engaged in quarrying stone in southwest Iowa, primarily in seven counties. Most of the quarries were on lands leased to Missouri Valley, some on lands it owned. When a quarry was depleted the company would move to another location, preferably one nearby. Some employees under the supervision of Floyd Lewellyn spent most of their

time prospecting for new quarries to which operations could be moved when need therefor arose. Leases on land found to have stone deposits that could be profitably mined were then sought or the land was purchased.

One quarry that had been worked extensively was the Snakert quarry near Crescent. North of it were lands of De-Waele on which the company held two leases. Farther north was land of Claar, within one and a half miles of the Snakert quarry, in the same area. On October 18, 1963, defendants obtained from Mr. and Mrs. Claar the lease for the quarrying of limestone which the trial court ordered defendants to assign to plaintiff upon its reimbursing them for the $500 they paid the Claars as down payment on the lease.

Herman Snater was president and owned about 92 percent of the stock of Missouri Valley. He had had some 32 years' experience in prospecting for and removing limestone deposits in southwest Iowa. Defendant Brooks became associated with the company in November 1957 as office manager. In 1959 or 1960 he acquired 31 or 32 shares of stock—all the stock not owned by Snater—and was elected a director and secretary-treasurer.

Defendant Kinsel was employed by Remo, Inc., which was associated with Missouri Valley, in March 1961. Remo was engaged in road construction. In March 1963 he became a director and operations manager of Missouri Valley. There is inconclusive evidence he also held the title of vice-president. As indicated, Kinsel was never a stockholder in Missouri Valley.

Defendants continued as officers and directors from the time each was elected until he formally resigned, effective October 22, 1963, on that day or the day before. In the meantime, on September 30, 1963, defendant Brooks and Snater each granted Schildberg Construction Company, Inc., a written option to purchase his stock in Missouri Valley for $1750 per share. Schildberg exercised this option on October 14. The option agreement provided that if it were exercised the seller would resign as officer and director at the request of the buyer on or before the closing date, October 28, 1963. Defendant Brooks' resignation complied with this provision. After Schildberg's purchase

of the stock was consummated the corporate name was changed from Missouri Valley to Schildberg Rock Products Co., Inc.

As might be expected, until Snater also resigned as president and director he directed the prospecting and mining operations of the company and solicited and negotiated leases on quarry sites. He was familiar with the Claar land and directed Lewellyn to drill some test holes in it. This was done early in 1963 and some samples—"core drillings"—were sent to the state highway commission to be tested. Results of the tests were returned to the company on May 20, 1963.

Defendant Brooks first learned of the Claar property, probably from Snater, shortly after Lewellyn and his crew were prospecting there in the spring of 1963. When the company received the results of the tests Brooks saw them. Brooks says that when Snater saw these reports he "appeared to lose interest in the thing." Brooks' impression was this was because the reports showed the full ledge of stone would not make "P.C." (Portland Cement) aggregate, we assume for road building.

Snater testifies he recalls no conversation, act or record that would indicate the company was not interested in the Claar property; more drilling would be required to determine the character of the ledge of stone there; he fully intended to do it in the fall when the company completed a highway paving job and a bulldozer was available; Lewellyn had told him Claar was willing to lease his property and Snater saw no need for haste. He also says that in negotiating for sale of the stock to the Schildbergs he definitely mentioned the drilling done on the Claar land, told them it was a good potential and suggested they follow through.

Defendant Brooks told Snater "we would not want a competitor to have the Claar lease" and says it is his impression Snater agreed with him and that it was generally conceded the Claar property was feasible as a limestone quarry and Missouri Valley would not want a competitor there.

Snater testifies the core drillings from the Claar land showed the quality of stone there was about like that in the "Snakert" quarry; there was ample bottom land on which the dirt above the stone (overburden) could be deposited; good lime-

stone deposits are scarce in southwest Iowa. These facts seem not to be disputed. It may be noted Snater has no apparent financial interest in the outcome of the case.

Claar first met defendant Brooks a month or two before the lease was signed when he went to the company office in Council Bluffs in an unsuccessful attempt to see the report on the samples taken from his land. As Claar went to leave, Brooks came out on the porch and they talked a little longer. Before the lease in question was signed defendants made four or five visits to the Claar home at intervals of five to ten days to discuss the matter. Defendants first introduced themselves to Claar as working for Missouri Valley and said they were interested in obtaining a lease on his property. According to Brooks they said the lease was to be for themselves or a company they planned to organize. Claar testifies he does not think defendants specifically told him who they were obtaining the lease for, that they showed him the drilling reports on his farm and he merely glanced at them.

During the negotiations with Claar, Brooks looked at the courthouse records for the location of the property. However, Brooks says he thinks he got from Claar the description used in the lease. (The description also appears in the report of the tests the company received from the highway commission which Brooks saw.) Brooks testifies he prepared the draft from which the lease was finally typed by a company secretary, using as guides part of a company lease and, primarily, a lease used by a paving contractor.

Before the lease was signed one or both defendants asked Lewellyn (in charge of the prospecting crew) about the feasibility of developing the Claar property and the value of a lease on it. Brooks' impression was that Lewellyn's opinion was favorable. All Brooks' knowledge about the Claar land before the lease was signed was obtained from Snater, Lewellyn and the report on the samples.

Snater did not know defendants were negotiating with Claar for a lease. Indeed the only fair inference is that defendants did not inform anyone connected with the company, except perhaps the secretary-typist, or with Schildberg of the negotiations. Two Schildbergs talked to Claar about a lease soon after their pur-

chase of the corporate stock was closed and he told them the lease had already been made. It is also true that defendants were unaware of negotiations between Snater and Schildberg for sale of the corporate stock until about September 30, 1963, when Snater and Brooks granted the stock options.

One fact defendants evidently think important is that on August 21, 1963, the company sold at auction a substantial amount of its equipment, including some used in stripping. Within a week afterward defendants approached Snater about purchasing his stock in Missouri Valley. Brooks says Snater appeared receptive but no price was ever agreed upon and no sale made.

On the evidence we have summarized the trial court found as facts that defendants were acting officers and directors of Missouri Valley on October 18, 1963, when they obtained the mineral lease from Claar; the company had explored for limestone and drilled test holes in the area and on the Claar land; defendants learned these facts and the results of the drilling from being officers and directors of the company; in their initial contacts with Claar they represented they were working for Missouri Valley; defendants paid $500 for execution of the lease.

As conclusions of law the court held that when the lease was executed and during the negotiations leading to it defendants as officers and directors of plaintiff-corporation were in a fiduciary relationship with it; the opportunity to enter into the lease came from their being officers and directors; the opportunity was of the type the corporation was engaged in, was financially able to undertake and would have an interest in; by retaining the opportunity personally the self-interest of defendants was in conflict with plaintiff-corporation and it is entitled to the benefits therefrom; the equities are with plaintiff and it is entitled to the relief sought.

The court also concluded relief should be granted on the further ground its denial would result in unjust enrichment.

Defendants-appellants' propositions relied on for reversal (see rule 344(a)(3), R. C. P.) are that it was error to find they were acting officers and directors of plaintiff-corporation on October 18, 1963, and to conclude: 1) a fiduciary relationship

then existed between defendants and the corporation; 2) that it had an interest or expectancy in the Claar property, it constituted a corporate opportunity and plaintiff was entitled to the benefits therefrom; and 3) that unless relief were granted there would be unjust enrichment. We consider these propositions in the order stated.

I. We cannot accept defendants' argument they were not acting officers and directors of the corporation after October 14, 1963, when Schildberg notified Snater and Brooks the stock options granted on September 30 were being exercised. As previously indicated, paragraph 3(c) of the option agreement, which became effective upon exercise of the option, provides the seller would resign at the request of the buyer on or before the closing date, October 28. Kinsel was not so bound since, as stated, he owned no stock.

Brooks' formal written resignation as officer and director, dated October 21, 1963, recites it is tendered in accordance with paragraph 3(c) of the option agreement and is effective October 22. Kinsel's resignation as officer and director, dated October 22, merely states it is tendered, effective that date. The lease with Claar was signed October 18. However, defendants acquired their knowledge of the Claar stone deposit several months earlier when they were admittedly acting officers and directors of the corporation and by reason thereof and the negotiations for the lease were conducted during the period they so acted. We approve the trial court's first finding of fact.

II. Our own and other decisions make it clear, and it is conceded, that officers and directors of a corporation are trustees or quasi trustees of the corporate assets and occupy a fiduciary relation to the corporation and its stockholders which requires them to act in the utmost good faith, not for their own personal interest. It is the policy of the law to put fiduciaries beyond the reach of temptation by making it unprofitable to yield to it. Accordingly an act by the fiduciary in which personal interest and duty conflict is voidable at the option of the beneficiary, regardless of good faith.

Precedents which support the above views include Hoyt v. Hampe, 206 Iowa 206, 220, 214 N.W. 718, 724; Des Moines Bank

& Trust Co. v. George M. Bechtel & Co., 243 Iowa 1007, 1080, 1081, 51 N.W.2d 174, 216; Gord v. Iowana Farms Milk Co., 245 Iowa 1, 16, 17, 60 N.W.2d 820, 829; Atlas Coal Co. v. Jones, 245 Iowa 506, 514, 515, 61 N.W.2d 663, 667–669. See also 3 Fletcher Cyc. Corporations, Perm. Ed., 1965 Revised Volume, section 838, pages 172–187; 19 Am. Jur.2d, Corporations, section 1272.

Volume 19 Am. Jur.2d, supra, says, "They [directors and officers] * * * impliedly undertake * * * to exercise the powers conferred solely in the interest of the corporation or the stockholders as a body or corporate entity, and not for their own personal interests."

Fletcher states the general rule as to a director or officer acquiring an interest adverse to that of the corporation. So far as applicable here it is (section 861, pages 223–226): "The general rule is that a director or other corporate officer cannot acquire an interest adverse to that of the corporation, * * * when dealing individually with third persons, and if he acquires an interest in an estate in which the corporation already has an existing interest, or where he acquires an interest outside, which the corporation had contemplated and desired acquiring, by * * * taking advantage of knowledge which he has as an officer of it, such acquisition will be taken to be for the benefit of the corporation. * * *. 'They cannot have or acquire any personal or pecuniary interest in conflict with their duty as such trustees.'"

See also Ontjes v. MacNider, 232 Iowa 562, 577–579, 5 N.W.2d 860, 868, 869; Des Moines Terminal Co. v. Des Moines Union Ry. Co., 8 Cir., Iowa, 52 F.2d 616; Melgard v. Moscow Idaho Seed Co., 73 Idaho 265, 251 P.2d 546; Young v. Columbia Oil Co., 110 W. Va. 364, 158 S.E. 678, 681, 682.

 Defendants' argument that in obtaining the lease they acted as reasonable men in the belief they violated no fiduciary duty toward the corporation does not call for a reversal. It may be conceded, without so finding, they intended no actionable wrong. However, the fact, previously noted, that they evidently did not inform the owner of some 92 percent of the stock or his or their own optionee of all stock of their negotiations with Claar and their purpose to obtain the lease for themselves is at

least a suspicious circumstance. In any event defendants placed themselves in a position where their duty to act for the corporation conflicted with their own self-interest and they chose to promote such self-interest in disregard of their duty to the corporation. We approve the trial court's first conclusion of law, supra.

■ III. We also agree with the court's second conclusion of law that the corporation's interest in the Claar stone deposit constituted a corporate opportunity which defendants had no right to acquire and plaintiff was entitled to the benefits therefrom.

■ The doctrine "corporate opportunity" is not new to the law and is but one phase of the cardinal rule of undivided loyalty on the part of fiduciaries. 3 Fletcher Cyc. Corporations, Perm. Ed., 1965 Revised Volume, section 861.1, page 227; 19 Am. Jur.2d, Corporations, section 1311, page 717. Our own consideration of the quoted term as such is mainly in Ontjes v. MacNider, supra, 232 Iowa 562, 579, 5 N.W.2d 860, 869, which quotes at length with approval from Guth v. Loft, Inc., 23 Del. Ch. 255, 272, 5 A.2d 503, 511, a leading case in this area of the law. The quotation cites several precedents for this: "* * * if there is presented to a corporate officer or director a business opportunity which the corporation is financially able to undertake, is, from its nature, in the line of the corporation's business and is of practical advantage to it, is one in which the corporation has an interest or a reasonable expectancy, and, by embracing the opportunity, the self-interest of the officer or director will be brought into conflict with that of his corporation, the law will not permit him to seize the opportunity for himself. And, if, in such circumstances, the interests of the corporation are betrayed, the corporation may elect to claim all of the benefits of the transaction for itself, and the law will impress a trust in favor of the corporation upon the property, interests and profits so acquired."

The MacNider case holds defendant did not seize a corporate interest by purchasing for himself stock in other cement companies because it was not essential to plaintiff's business,

plaintiff had no interest or expectancy therein and the directors of plaintiff corporation had conclusively indicated they were not interested in purchasing corporate stocks. There MacNider informed the directors of his original purchase of stock and they knew of his later acquisitions. These and other differences in the facts in MacNider from those here account for the different result there reached.

■ Where a corporation is unable to avail itself of an opportunity or declines it an officer or director may embrace it as his own without accounting to the corporation. 19 Am. Jur.2d, Corporations, section 1313, pages 720, 721; 3 Fletcher, section 862.1, pages 240–244; Diedrick v. Helm, 217 Minn. 483, 14 N.W. 2d 913, 920, 153 A. L. R. 649, 659.

We think the evidence brings this case within the corporate opportunity rule stated in Guth v. Loft, Inc., supra, 23 Del. Ch. 255, 270, 5 A.2d 503, 511, approved in Ontjes v. MacNider, supra, 232 Iowa 562, 579, 5 N.W.2d 860, 869. Plaintiff was financially able to enter into and utilize the Claar lease, the opportunity was in the line of plaintiff's business and of practical advantage to it, plaintiff had an interest and reasonable expectancy in the opportunity, by embracing it for themselves' the self-interest of defendants was brought into direct conflict with that of plaintiff.

We note defendants do not challenge the trial court's findings of fact previously summarized, except the finding they were officers and directors when the lease was made. The findings are well supported by the evidence and consistent with the conclusion of law the corporate opportunity rule is applicable.

We regard the fact that Snater desired to do further drilling on the Claar land before definitely deciding that the company should negotiate a lease on it as the fact most favorable to defendants. But we are not persuaded it calls for a reversal. We think it does not show the corporation declined the opportunity. Nor does Brooks' opinion that Snater "appeared to lose interest in the thing" when he saw the report on the samples sent the highway commission. As stated, Snater was unaware defendants were negotiating with Claar, Lewellyn had informed Snater Claar was willing to lease his land and Snater saw no immediate need for haste.

Precedents not previously cited herein which support the views expressed in this division include McKay v. Wahlenmaier, 96 App. D. C. 313, 226 F.2d 35, 44-46; Durfee v Durfee & Canning, 323 Mass. 187, 80 N.E.2d 522, 527-530; Lutherland, Inc. v. Dahlen, 357 Pa. 143, 151, 53 A.2d 143, 147, 148.

IV. Defendants' final proposition challenges the court's conclusion of law that denial of relief would result in unjust enrichment of defendants.

We might properly decline to consider this proposition on the ground the decree is right and finds adequate support in the findings of fact and other conclusions of law; hence the conclusion as to unjust enrichment, if erroneous, would be without prejudice to defendants. Roth v. Headlee, 238 Iowa 1340, 1348, 29 N.W.2d 923, 927; Board of Park Commissioners v. City of Marshalltown, 244 Iowa 844, 855, 58 N.W.2d 394, 400; In re Estate of Lawrence, 251 Iowa 305, 314, 100 N.W.2d 645, 651, and citations in these opinions.

However, we are satisfied the conclusion is not erroneous. We have recently considered the doctrine of unjust enrichment in Gard v. Razanskas, 248 Iowa 1333, 1336, 85 N.W.2d 612, 614, 65 A. L. R.2d 982; Shadle v. Borrusch, 255 Iowa 1122, 1126, 1127, 125 N.W.2d 507, 510; Smith v. Stowell, 256 Iowa 165, 173, 125 N.W.2d 795, 799, 800. The factual situations in the cited cases differ from the present facts, but the statements of what constitutes unjust enrichment are applicable.

One such statement is that a person is unjustly enriched if the retention of a benefit would be unjust. Another is that a person should not be allowed to profit or enrich himself inequitably at the expense of another. Also that unjust enrichment occurs when a person retains money or benefits which in justice and equity belong to another. See Shadle v. Borrusch, supra, and citations.

Several decisions in cases of this kind hold relief should be granted on the ground its denial would result in unjust enrichment of corporate officers or directors who acquire and retain for themselves property or benefits in violation of their fiduciary relation to the corporation. Atlas Coal Co. v. Jones, supra, 245 Iowa 506, 515, 61 N.W.2d 663, 668; Liken v. Shaffer, 8 Cir.,

Iowa, 141 F.2d 877, 880, 881, from which Atlas Coal Co. v. Jones quotes with approval; Lutherland, Inc. v. Dahlen, supra, 357 Pa. 143, 151, 53 A.2d 143, 147.

The Lutherland opinion states the test of the liability of a corporate officer or director who seizes a business opportunity within the scope of the corporation's activities and of present or potential advantage to it "is whether he has unjustly gained enrichment" (citation).

We hold the decree is right and it is—Affirmed.

All JUSTICES concur.