A & A METAL BUILDINGS, a Domestic Corporation, Plaintiff and Appellee,

v.

I–S, INC., d/b/a Underwood Redi-Mix, a Domestic Corporation, Defendant and Appellant.

Civ. 9506.

Supreme Court of North Dakota.

Dec. 6, 1978.

Thomas F. Kelsch, of Kelsch, Kelsch & Tudor, Bismarck, for plaintiff and appellee.

Peter S. Pantaleo, of Lundberg, Conmy, Nodland, Rosenberg, Lucas & Schulz, Bismarck, for defendant and appellant.

PAULSON, Justice.

The appellant, I–S, Inc., doing business as Underwood Redi-Mix [hereinafter I–S], appeals from the judgment of the Burleigh County District Court awarding five thousand six hundred sixty-six dollars and forty-one cents ($5,666.41) in damages and interest to A & A Metal Buildings [hereinafter A & A], after A & A paid I–S money owed by A & A's subcontractor, Jake's Concrete Company [hereinafter Jake's], in order to secure release of the Demand for Payment and Notice of Intention to File a Lien [hereinafter Demand and Notice], on the Underwood Fire Hall, which was being constructed by A & A. The district court determined that I–S had contracted directly with Jake's and that A & A was not liable for Jake's debts; that I–S had improperly filed a Demand and Notice on the Underwood Fire Hall property; and that the money paid by A & A to get I–S's Demand and Notice released and to enable A & A to receive payment from the Underwood Rural Fire Protection District [hereinafter Underwood Fire District] pursuant to its construction contract, was paid without consideration. Therefore, the court held that A & A was entitled to a judgment of $4,872.66, the amount which A & A had paid I–S, plus interest from the date on which the cause of action arose. We affirm.

On December 30, 1975, the Underwood Fire District awarded the contract for the construction of the new fire hall in Underwood to A & A. Financing for the project was arranged through the Farmers' Home Administration [hereinafter FHA].

In early May of 1976, A & A began construction of the Underwood Fire Hall and subcontracted with Jake's to do the concrete work on the project. Jake's then contracted with I–S to have I–S supply the needed ready-mix concrete for the fire hall. I–S furnished Jake's with concrete and other materials between May 25 and June 7, 1976, when the concrete work was finished.

On June 10, Jake's issued a check to I–S for forty-four hundred forty-seven dollars and twelve cents ($4,447.12) in payment for

concrete and other materials supplied to him for the fire hall project. In return, Jake's obtained a receipt and lien waiver from I–S. On June 11, A & A issued Jake's a check for fifteen hundred dollars ($1,500) in partial payment for Jake's concrete construction work. On June 14, the fire hall was inspected by the project's architect who informed A & A that the driveway had been constructed improperly and would have to be removed and reconstructed. A & A stopped payment on its $1,500 check to Jake's on the following day. Jake's then stopped payment on its $4,447.12 check to I–S on June 17.

I–S received notice of Jake's stop-payment order on June 17. Officers of I–S then contacted attorney William F. Lindell who suggested that I–S could file a mechanic's lien against the owner of the property.

Between June 18 and June 23, two telephone calls were made between A & A and I–S. During the first telephone call Claire Ihringer of I–S told Kenneth Scherr of A & A that Jake's had stopped payment on the check to I–S and requested that A & A pay Jake's concrete bill. Scherr responded that A & A had not contracted with I–S for any concrete and that it was not responsible for Jake's bills. According to Scherr, Ihringer then stated that I–S would file a mechanic's lien against the owner if the concrete bill was not paid. Ihringer testified at the trial that he could not recall whether or not he had mentioned that I–S might file a lien.

Following the phone call, Kenneth Scherr consulted A & A's attorney regarding lien laws. At trial, Scherr testified that during the second telephone call he informed Claire Ihringer that I–S could not legally obtain a lien and suggested that I–S check the lien laws. Ihringer could not recall whether or not Scherr informed him that I–S could not properly file a lien against the fire hall property.

On June 24, I–S served a Demand and Notice on A & A, Jake's, the Underwood Fire District, and the FHA. The Demand and Notice, which stated that a lien would be filed if Jake's' bill was not paid within fifteen days, was filed with the clerk of the McLean County District Court on June 28. On that date, A & A's attorney, Alfred C. Schultz, wrote I–S and demanded that suit be commenced within thirty days. Schultz also informed I–S that its Demand and Notice was not in compliance with § 35–27–02, N.D.C.C.

A & A was notified on the morning of July 7, 1976, that there would be a meeting that afternoon to close the loan on the fire hall. The meeting was attended by the architect of the project, a representative of the Underwood Fire District, two representatives of the FHA and Kenneth Scherr of A & A.

At the meeting, A & A was informed that the project had to be approved by the FHA that afternoon in order for the loan to be completed. The FHA, on the advice of its attorney, refused to close the loan until the Demand and Notice was removed. If the loan was not closed on that day, the loan money would have been returned to the FHA office in St. Louis and the Underwood Fire District would have had to reapply after the Demand and Notice was removed. Testimony at trial indicated that the reapplication process would take a minimum of thirty days.

A & A was under substantial pressure to pay I–S the money owed to it by Jake's in order to get the Demand and Notice released. If the loan failed to be closed, A & A would not have received twenty-five thousand dollars ($25,000) due under the construction contract for at least thirty days until reapplication could be made. A & A needed the money to meet its payroll and to obtain discounts on materials purchased for the project by paying its bills by the tenth of the month. A & A had contacted its attorney for advice but the attorney was out of town. Although A & A orally objected at the meeting that it was not responsible for Jake's bills and owed I–S nothing, A & A agreed to pay the money owed to I–S by Jake's in return for a release of the Demand and Notice so the FHA loan would be approved and A & A would be paid its $25,000 due under the contract.

A & A paid I–S four thousand eight hundred seventy-two dollars and sixty-six cents ($4,872.66)[1] in full payment of the money due I–S under its contract with Jake's. I–S then released its Demand and Notice, the FHA loan was approved and A & A was paid $25,000. On July 13, 1976, A & A's attorney demanded in writing that I–S return the $4,872.66 which had been paid by A & A. When I–S failed to comply with A & A's request, A & A brought an action against I–S on February 22, 1977. A & A sought a judgment for $4,872.66 plus $5,000 in exemplary damages against I–S for illegally filing an improper Demand and Notice against the Underwood Fire Hall which forced A & A to pay Jake's debt for which it was not liable.

The case was tried without a jury before the Burleigh County District Court on March 31, 1978. The district court awarded A & A a judgment for $4,872.66 plus interest from the date the cause of action arose. No exemplary damages were awarded.

The following issues are raised for appeal:

1. Did the trial court determine that I–S had committed the tort of abuse of process?
2. Did the trial court err in awarding a judgment for A & A in the amount it had paid I–S to release its Demand and Notice plus interest?

A & A, in its complaint, raised the pertinent allegations which are summarized as follows:

1. A & A obtained a contract to construct a new fire hall in Underwood;
2. A & A subcontracted to have Jake's perform the concrete work on the project;
3. I–S claimed that Jake's owed it $4,872.66 for concrete and materials used on the project;
4. When Jake's failed to pay its debt to I–S, I–S filed a Demand and Notice against the fire hall property with the clerk of the McLean County District Court;
5. I–S was not entitled to file a Demand and Notice because it had not complied with § 35–27–02, N.D.C.C.;
6. I–S knew that it was not entitled to file a Demand and Notice against the fire hall;
7. A & A was not indebted to I–S at any time;
8. A & A was not responsible for the debts for Jake's, its subcontractor;
9. I–S, with malice, without probable cause and with intent to injure A & A, filed the Demand and Notice which it knew it was not entitled to for the sole purpose of forcing A & A to pay I–S for the debt owed by Jake's;
10. I–S knew that the FHA loan would not be closed and that A & A would not be paid under its construction contract until the Demand and Notice was released;
11. I–S knew that if the loan was not closed, A & A would lose the benefit and use of the contract money and would incur a loss by not being able to make timely payment for the materials it had purchased for the fire hall project;
12. The FHA did refuse to release the fire hall loan money for payment to A & A until the Demand and Notice was released; and
13. A & A was forced to pay I–S $4,872.66 for Jake's debt in order to get the Demand and Notice released and get paid $25,000 under its contract.

A & A demanded judgment for relief against I–S in the following amounts:

1. $4,872.66 plus interest from July 9, 1976;
2. Exemplary damages for harassment, oppression and malice in the amount of $5,000; and
3. Costs, disbursements, attorney's fees and such other relief that the court may deem just and equitable.

1. $4,872.66 is the correct amount owed by Jake's. The original bill of $4,447.12 did not include all materials procured by Jake's from I–S.

A & A's complaint provided a detailed description of its claim showing that it was entitled to relief. Although A & A's complaint did not state a specific theory of grounds for relief, its counsel did raise the tort theory of abuse of process during trial.

Section 35–27–02, N.D.C.C., provides, in pertinent part:

"*Who entitled to mechanic's lien.*—Any person who improves real estate by the contribution of labor, skill, or materials under contract with the owner of such real estate shall have a lien upon the improvement, and upon land on which it is situated or to which it may be removed, for the price or value of such contribution. . . . *No person shall have a lien for improving real estate resulting from extending credit to or making contract with any agent, trustee, contractor, or subcontractor of such owner, unless such person first notifies the owner in writing of the provisions of chapter 35–27 and obtains a copy of the contract by which the owner authorizes his agent, trustee, contractor, or subcontractor to seek credit or make contracts in the owner's name, or by which the owner personally assumes responsibility for payment upon default by the owner's agent, trustee, contractor, or subcontractor.* In all latter cases, any person claiming a lien for improving real estate shall first proceed by judicial action against the owner's agent, trustee, contractor, or subcontractor and exhaust his remedies of collection upon obtaining judgment before he shall have a lien upon the improvement, or upon the land on which it is situated or to which it may be removed. (Emphasis added.)"

Section 35–27–05, N.D.C.C., provides, in pertinent part:

"*Notice of intention to claim lien—Filing.* —Any person having a contract for the improvement of land in accordance with section 35–27–02 may file for record, with the clerk of court of the county within which the land is situated, a notice of intention to claim a mechanic's lien, which shall be notice to all of his inten-

tion to perfect a lien for contract price or value of all contributions to such an improvement thereafter made by him or at his instance. . . ."

The trial court specifically held that I–S did not comply with the requirements of § 35–27–02, N.D.C.C., and was not entitled to file a Notice of Intention to File a Lien pursuant to § 35–27–05, N.D.C.C. These findings were not attacked by I–S on appeal. We must now consider whether or not the trial court determined that I–S's improper filing of the Demand and Notice constituted an abuse of process.

The elements of abuse of process were discussed by this Court in *Blair v. Maxbass Security Bank of Maxbass*, 44 N.D. 12, 176 N.W. 98 (1919). In *Blair, supra* 176 N.W. at 100, we stated that an abuse of process can occur only when the facts constituting the abuse are done willfully. If the acts are done maliciously, exemplary damages can also be sought, but willfulness is the basic requirement. A person is liable for an abuse of process if he knowingly participates in the abuse of process. *Id.* Good faith, however, is a defense. *Id.*

In determining whether or not the trial court concluded that I–S had tortiously abused process, we must review the court's memorandum opinion, findings of fact and conclusions of law. A perusal of these documents indicates that the trial court made no specific determination that I–S had committed the tort of abuse of process.

In addition, the court made specific findings that I–S had no malicious intent to harm A & A; that I–S was inexperienced with liens; and that I–S had acted solely on the advice of counsel in filing the Demand and Notice. The court also determined that A & A and I–S were both "innocent parties". Innocence would be inconsistent with committing a tortious abuse of process.

From the record before us, we conclude that the trial court did not determine that I–S had committed the tort of abuse of process.

We will now determine whether the trial court's decision constitutes error or may be

supported on grounds other than abuse of process. Because the court did not specifically find that I–S had violated A & A's legal rights by committing an abuse of process or any other tort, we will consider whether the district court's decision was based upon its equitable jurisdiction.

The court made the following pertinent findings of fact:

1. I–S extended credit directly to Jake's for concrete;

2. Jake's failed to pay I–S for the concrete;

3. A & A had no involvement with I–S;

4. I–S filed a Demand and Notice;

5. A & A was informed that it would not be paid its $25,000 due under the contract until the Demand and Notice was released;

6. A & A needed the money to meet its payroll and take advantage of supplier discounts by making prompt payment;

7. A & A reluctantly agreed to pay I–S $4,872.66 to get the Demand and Notice released; and

8. I–S had no experience with liens and acted on the advice of counsel and without malicious intent to harm A & A.

The trial court then made the following pertinent conclusions of law:

1. I–S did not comply with the requirements of § 35–27–02, N.D.C.C., and was not entitled to file the Demand and Notice;

2. There was a total lack of consideration when A & A paid I–S the money to release the Demand and Notice because A & A owed no obligation to I–S;

3. A & A did not waive its claim against I–S by paying the money in return for the release;

4. A & A paid the money to mitigate damages;

5. I–S was in the position of protecting its interest and when one of two innocent persons must suffer by the act of the third, he by whose negligence it happened must be the sufferer;

6. Because there was no malice intended, I–S was not liable for exemplary damages; and

7. A & A was entitled to a judgment against I–S for $4,872.66, the amount which it paid to get the Demand and Notice released, plus interest.

From the foregoing findings and conclusions it appears that the court relied upon its equity powers in making its decision. It did not base its decision upon any specific legal theory; it found both parties to be innocent and made no finding of bad faith by I–S; it found that A & A had paid money to I–S for a debt it did not owe; that A & A objected to paying the money; and that A & A had paid the money as a result of I–S's filing of an improper Demand and Notice in order to mitigate damages. Therefore, we conclude that the trial court's decision was based upon the equitable theory of unjust enrichment, even though the court did not specifically state the theory.

■ A court has equitable jurisdiction to provide a remedy where none exists at law, even if the parties have not specifically requested an equitable remedy, whenever the complaint sufficiently gives notice of the party's right to relief and demand for judgment pursuant to Rule 8(a), N.D.R. Civ.P. The trial court could provide an equitable remedy in the present case as long as the equitable theory was sufficiently within the scope of the complaint.

■ Unjust enrichment is an equitable theory that may be used when a person retains a benefit which in justice and equity belongs to another. *Schildberg Rock Products Co. v. Brooks*, 258 Iowa 759, 140 N.W.2d 132, 138–39 (1966); *Gard v. Razanskas*, 248 Iowa 1333, 85 N.W.2d 612, 614 (1957); and *Federal Corporation v. Radtke*, 229 Wis. 231, 281 N.W. 921, 923 (1938). Under the theory, a "person shall not be allowed to profit or enrich himself inequitably at another's expense." *Alburn v. Union Trust Co.*, 80 N.E.2d 721, 729 (Ct.Com. Pl.Ohio 1947), citing 43 Words and Phrases,

Undue Influence, Perm.Ed., page 272. When a person has been unjustly enriched at the expense of another, he must make restitution to the other. *Gard v. Razanskas, supra* 85 N.W.2d at 614.

■ According to *Abbeville Lumber Company v. Richard*, 350 So.2d 1292, 1300 (La.App.1977), recovery under the theory of unjust enrichment requires five elements:

1. An enrichment;
2. An impoverishment;
3. A connection between the enrichment and impoverishment;
4. Absence of a justification for the enrichment and impoverishment; and
5. An absence of a remedy provided by law.

In the present case, the trial court made the following determinations:

1. I–S had been enriched;
2. A & A had been impoverished;
3. I–S's enrichment was directly related to A & A's impoverishment;
4. There was an absence of justification for the enrichment and impoverishment because A & A paid I–S money that it did not owe as a result of I–S's filing a Demand and Notice which it had no right to file; and
5. No specific finding regarding legal rights and remedies was made.[2]

■ We conclude that I–S obtained a benefit from A & A; that I–S obtained the benefit by improperly filing a Demand and Notice; that I–S would not have obtained the benefit without filing the improper Demand and Notice, and that I–S was unjustly enriched when it obtained the benefit that, in justice and equity, belonged to A & A.

Therefore, we hold that the trial court did not err in awarding A & A a judgment for $4,872.66, the amount by which I–S had been unjustly enriched, plus interest from the date the cause of action arose. Although an equitable remedy was not specifically sought by A & A, the trial court had

jurisdiction to apply this equitable remedy because it was within the scope of A & A's complaint and prayer for relief.

The judgment of the district court is affirmed.

ERICKSTAD, C. J., SAND, J., and HEEN, District Judge, concur.

HEEN, District Judge, sitting in place of VANDE WALLE, J., disqualified.

PEDERSON, Justice, dissenting.

I agree with the majority opinion that A & A cannot recover from I–S on the principle of abuse of process, but I do not agree that recovery can be based upon unjust enrichment.

Anyone who enters into a contract for erection of a public building must provide a bond guaranteeing performance of the contract and "shall pay all bills or claims on account of labor and materials . . . used in and about the performance of said contract . . . ." Section 48–01–01, NDCC. See also Section 43–07–11, NDCC.

If A & A chose to sublet any part of its contract to Jake's without requiring the posting of a subcontractor's performance bond, then the bond which it furnished to Underwood guaranteed the payment to I–S for material furnished. I–S was not unjustly enriched and A & A was not unjustly required to pay for material which its contract required it to pay. I would either reverse the judgment entirely or remand so that the proper parties and proper issues could be brought into the case.

---

2. According to North Dakota law, a party may obtain an equitable remedy even if he has a remedy at law if the equitable remedy is better adjusted to rendering complete justice. *Graven v. Backus*, 163 N.W.2d 320 (N.D.1968).