**Michael L. KELLY, Appellee,**

v.

**IOWA VALLEY MUTUAL INSURANCE ASSOCIATION, A Corporation, Appellant.**

**No. 68106.**

Supreme Court of Iowa.

April 20, 1983.

Pat W. Brooks of Mowry, Irvine, Brooks & Ward and Edwin Bartine of Kemler, Lovig & Bartine, Marshalltown, for appellant.

James C. Wilson of Wilson, Hall, Wilson & Craig, Eldora, for appellee.

Considered by UHLENHOPP, P.J., HARRIS, McGIVERIN and CARTER, JJ., and LeGRAND, Senior Judge.

McGIVERIN, Justice.

This appeal arises from a factual situation unique to the body of insurance law in Iowa. Defendant insurer, Iowa Valley Mutual Insurance Association, appeals from a judgment for plaintiff Michael L. Kelly for fire damage to a house plaintiff was leasing with an exclusive option to purchase the

realty. Two issues are presented for review: 1) whether plaintiff lessee had an insurable interest in the leased house, which he was improving; and 2) if plaintiff had an insurable interest, whether it extended to the full value of the fire loss. We agree with the trial court that Kelly had an insurable interest in the house to the full extent of the loss.

In June of 1975 plaintiff negotiated with Larry and Nancy McDowell to purchase from them approximately seven acres of land with a dilapidated house and shed situated thereon. Plaintiff and the McDowells testified that the agreed upon terms of sale were a purchase price of $7500 with a $500 down payment and installments of $100 per month at eight percent interest on the unpaid balance. But because of concerns about the property settlement in Kelly's pending divorce, the land transaction was formalized in a lease with an exclusive option to purchase. The lease was for a period of one year commencing July 1, 1975, and included the following option to purchase: "Option is granted 2nd party to purchase said property for $7,500 and receive full credit for all rent payments and Escrow payments less interest at 8% on $7,000.00...."

Kelly moved into a trailer on the property and began improvements on the house in order to make it habitable. The materials used in the improvements came from other houses which plaintiff was tearing down. At trial he testified that the improvements were worth an estimated $3,000–$4,000.

On November 15, 1975, Kelly applied to defendant insurer for a fire, windstorm and extended coverage insurance policy for the dwelling and shed on the real estate he was leasing. Plaintiff represented to defendant's agent that he was the owner of the premises. On November 18 defendant issued to plaintiff an owner's policy insuring the dwelling for $6,000. Plaintiff testified the value of the house then exceeded $6,000.

A fire totally destroyed the dwelling on December 9, 1975, and plaintiff gave notice of the loss to defendant on the same day. Three days later plaintiff executed and delivered to defendant insurer the following document at the suggestion of the realtor who had prepared the lease:

This is to signify that my intentions are and have been from date of June 16, 1975 which is the date of lease with option to buy to purchase the real estate I now occupy and the insurance policy taken out on the same may have a loss payable attached thereto to Larry McDowell and Nancy McDowell, and the recent loss suffered on the property may be made payable to Larry McDowell and Nancy McDowell and Michael L. Kelly.

/s/ Michael L. Kelly.

On December 30 defendant notified Kelly that it was denying his claim for loss on the basis that he was not the owner of the insured property as stated on his application.

Plaintiff exercised his option to purchase the property. On May 10, 1976, he and the McDowells entered into a contract and McDowells executed a warranty deed, which was placed in escrow. This contract provided that the purchase price was $7,500; the down payment was $1,017.85; and the balance of $6,482.15 was to be paid in $100 monthly installments with the interest at eight percent. These terms tracked with those in the option to purchase contained in the prior lease. At the time of trial plaintiff was current on his payments to McDowells.

The court entered judgment for plaintiff for the $6,000 face amount of the policy. The court ruled that Kelly's misrepresentation concerning ownership of the insured property did not void the insurance policy because defendant had not relied on the misrepresentation to its injury. *Olson v. Southern Surety Co.*, 201 Iowa 1334, 208 N.W. 213 (1926). (This issue is not before us on appeal.) The trial court also ruled that Kelly had an insurable interest in the property to the full extent of the loss, subject to policy limits. The court based its ruling on the fact that Kelly had an absolute and exclusive option to buy the real estate and that Kelly would suffer a pecuniary loss from destruction of the property.

Defendant appeals.

■ I. *Insurable interest.* Defendant contends that a lessee does not have an insurable interest in leased property if he has not exercised his option to purchase that property prior to its destruction. Iowa tenants, however, have long been regarded as having an insurable interest. *Schaeffer v. The Anchor Mutual Fire Insurance Co.,* 113 Iowa 652, 653–54, 85 N.W. 985, 985 (1901) ("any interest may be insured if the peril against which insurance is made would bring upon the insured by its immediate and direct effect a pecuniary loss"; however, extent of lessee's insurable interest not decided as parties stipulated to amount of recovery). *See generally,* 4 Appleman, *Insurance Law and Practice* § 2193 (1969); E. Patterson, *Essentials of Insurance Law* § 23 at 90 (1935); Pinzer, *Insurable Interest: A Search For Consistency,* 46 Ins. Couns.J. 109 (1979).

Further discussion of this issue, therefore, is unnecessary. Kelly had an insurable interest in the leased property with or without exercising his option to purchase.

■ II. *Extent of insurable interest.* The main issue before us, therefore, is the extent of the insurable interest of a lessee with an option to purchase who exercises his option after the loss occurs. Defendant argues that the extent of such a lessee's insurable interest should be the value of the use of the premises and improvements during the unexpired term of the lease. Defendant relies on *Resnick v. City of Fort Madison, Iowa,* 259 Iowa 578, 582, 145 N.W.2d 11, 14 (1966) (in the absence of an agreement by a landlord to pay for improvements at lease's termination a tenant cannot recover for such). We disagree.

Initially, we note the novel factual twist of this case. This is not a case in which both the lessor and the lessee, who exercised his option to purchase after the loss, claim the insurance proceeds. If such were the facts, it is clear that in Iowa the insurance proceeds would be applied against the purchase price of the option. *Gard v. Razanskas,* 248 Iowa 1333, 85 N.W.2d 612

(1957). In the present case, however, McDowells make no claim to the insurance proceeds; the only question is whether plaintiff is entitled to recover for the full amount of his loss. We conclude that he is.

Our conclusion is supported by a close reading of the rationale of *Gard* and the cases upon which it relied. The most persuasive of those cases are *Dolan v. Spencer,* 92 Colo. 389, 21 P.2d 411 (1933); *Williams v. Lilly,* 67 Conn. 50, 34 A. 765 (1895); and *Nelson Properties, Inc. v. Denham,* 123 Fla. 382, 167 So. 35 (1936). *See also Skinner & Sons' Ship-Building and Dry-Dock Co. of Baltimore City v. Houghton,* 92 Md. 68, 48 A. 85 (1900) (when option is exercised and contract fully performed after fire damaged property, the relationship between the vendor and vendee, in regard to insurance proceeds, is that of trustee and cestui que trust); *Cullen & Vaughn Co. v. Bender Co.,* 122 Ohio St. 82, 170 N.E. 633 (1930) (upon exercising option to purchase, lessee entitled to credit for compensation received by lessor for portion of land condemned for public use); *Russell v. Elliott,* 45 S.D. 184, 186 N.W. 824 (1922) (in a suit against vendors for specific performance, vendees are entitled to a credit on the price for insurance proceeds for damages to the property after contract for sale of property entered into but before it was executed). Implicit in those cases is the realization that their unique factual situations cast the plaintiffs in those cases in a role other than that of a mere lessee. The position of the lessee who exercises an option to purchase after the loss is stated in *Williams v. Lilly,* 67 Conn. at 56, 34 A. at 767 (1895):

If the case before us, then, is not one in which the relation of parties to a contract for the sale and purchase of real estate exists, it is also clearly not one in which that of lessor and lessee of property, with an incidental option to the lessee to purchase only the leased property, is created, or of a simple unilateral contract of option.

In *Gard* we characterized such a lessee as being "in the same position regarding his right to the insurance money as the purchaser in a contract for the sale of the

land." *Gard,* 248 Iowa at 1338, 85 N.W.2d at 615 (quoting 55 Am.Jur., *Vendor and Purchaser* § 406 at 827).

The reason for not characterizing the plaintiff as a mere lessee is "because on [the date of the fire Kelly's] relation to the premises, although that of lessee thereof at that time, was nevertheless, designed, understood, and intended by the parties to be incidental to a broader connection with the property as an inchoate purchaser thereof." *Nelson Properties, Inc. v. Denham,* 123 Fla. at 385, 167 S. at 36; *see also, Jameson v. Foster,* 646 P.2d 955, 959 (Colo.Ct.App. 1982); *but cf., Gayle v. Commercial Union Assurance Co.,* 398 S.2d 604, 606 (La.Ct.App. 1981) (lessee who exercises option to purchase after premises damaged by fire not entitled to insurance proceeds absent a specific agreement to the contrary). Not characterizing a lessee such as Kelly as a *mere* lessee is especially pertinent to the present case, because it was the intention of the parties from the outset of the negotiations that Kelly would purchase the property. The parties initially entered into a lease agreement because, as the trial court stated, "they followed the poor advice of a layman [real estate agent] who decided to 'help' them when they really did not need the help."

In sum, although plaintiff was technically a lessee at the time of the fire, under the facts of this case, the extent of his insurable interest was the same as a vendee's. Consequently, since the loss fell on Kelly he is entitled to coverage for the full amount of the loss to the extent of the policy coverage. *See Brady v. Welsh,* 200 Iowa 44, 46, 204 N.W. 235, 236 (1925). The trial court correctly awarded him judgment for the stated amount of the policy, $6,000.

■ We note that in affirming the judgment as to the amount awarded, we do so on narrower grounds than those of the trial court. The court based its ruling on the fact that plaintiff had an absolute and exclusive option to buy the real estate, while we base our holding on the fact that plaintiff *exercised* this option after the loss. We, however, need not adopt the premise of the trial court in order to sustain its conclusion. *State v. McCowen,* 297 N.W.2d 226, 227 (Iowa 1980). We do not now consider the situation where the option is not exercised after the loss.

AFFIRMED.